THE STATE OF OHIO, APPELLEE, *v.* GAVIN APPELLANT.

[Cite as State v. Gavin (1977), 51 Ohio App. 2d 49.]

50

(No. 35391—Decided January 13, 1977.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Alonzo Snipes, Jr.,* for appellant.

I.

DAY, P. J. This appeal stems from the conviction for felonious assault of defendant-appellant, Johnnie Gavin (defendant). The victim, Adell Stillwell, was the manager of a poolroom (Southeast Recreation Center) situated at 4118 East 131st Street in Cleveland. At 12:30 a. m. on March 14, 1975, Stillwell was preparing to close the poolroom, while two patrons, Larry and Ernest Kaiser, were

still there. All three men left the poolroom, and as they stepped outside Stillwell saw a "quick movement" and fire in the entranceway of the adjoining building. All three men fled back into the poolroom, where it was discovered that Stillwell had been shot. Larry Kaiser testified that when he walked out of the poolroom he saw defendant with a rifle and looked defendant "dead in the face" before defendant fired the gun. Another witness had seen defendant in a nearby alleyway with a shotgun about midnight that same evening.

Policemen who arrived at the scene shortly after the incident received descriptions from bystanders of a male, thought to have a rifle, who got into a Ford automobile and left. A witness gave police the license number of the car. While the police were at the scene an automobile matching the description went by. The vehicle was apprehended. Three men were in the car—defendant, Kermit Matlock, and one Krenshaw. Matlock testified that: defendant had signaled him to pull over near the poolroom earlier that evening; defendant entered the car with what appeared to be a gun that resembled State's Exhibit No. 8; Matlock drove defendant home, at which time defendant took the gun out of the car and returned in half a minute without it; both men then returned to the area of the poolroom to get the defendant's coat.

Later that evening the police went to defendant's residence. The police met Charles Gavin, defendant's father, and informed him of his son's arrest. The police asked permission of Charles Gavin to search the house. Gavin, who owned it, consented. The defendant lived there with him. The search yielded, among other items, a shotgun found on the front porch. Police examination and testing of the gun revealed that it was the one fired near the poolroom on the evening of March 13th-March 14th, 1975.

Defendant denied participating in the shooting, and claimed that he had loaned his rifle to Matlock that evening.[1]

---

[1]Defendant claims to have been pistol-whipped and robbed by the Kaiser brothers one month prior to this incident. Defendant testified that he was angry at the Kaisers for the robbery.

Defense counsel moved to suppress the guns found at the home after the testimony of the State's first witness. The motion was overruled. The court granted the State's motion *in limine*. This blocked questioning of State witness Larry Kaiser concerning any pending indictments against him in the instant jurisdiction. At the time of trial it appears that Kaiser was incarcerated in the Cuyahoga County jail for the shooting of a police officer. At the close of all the evidence defense counsel requested a charge on aggravated assault. The court overruled the motion. The court did not charge on aggravated assault, and defense counsel objected at the close of the charge and renewed his request.

Defendant appeals raising three assignments of error.[2] For reasons assessed below we find Assignments No. 1 and 3 without merit. Assignment No. 2 is well taken. We reverse.

## II.

Crim. R. 12(B)(3) specifies that a motion to suppress evidence must be made before trial. Failure to do so constitutes a waiver unless the court for "good cause shown" grants "relief from the waiver," Crim. R. 12(G). Here, defendant failed to make his motion to suppress until after the State had examined its first witness at trial. The court did not abuse its discretion in overruling the motion be-

---

[2]*Assignment of Error No. 1*:

"The petitioner was denied his rights against illegal search and seizure under the Fourth Amendment of the Constitution, made applicable to the State by the Fourteenth Amendment and the Trial Court Errored In Not Granting Defense Motion to Suppress, Declare Mistrial and Granting Motion In Limine [*sic*]."

*Assignment of Error No. 2*:

"The petitioner was denied his rights Under Due Process Clause Fifth Amendment; To Be Confronted With The Witness Against Him And To Have The Assistance Of Counsel For His Defense [*sic*]."

*Assignment of Error No. 3*:

"The Trial Court Errored In Not Charging The Jury On The Law Relative To A Lessor And Included Offense Of Felonious Assault [*sic*]."

Defendant's brief treats the *in limine* problem under the second assignment. This is where it belongs. It is treated there in the opinion.

cause the motion was not timely. The defendant waived his right to assert it, Crim. R. 12(B)(3).

Even had the motion been timely, the court correctly overruled it. Warrantless searches are permissible when the "* * * parent who owns or controls the premises in which a child resides * * *" consents to the search, *State* v. *Carder* (1966), 9 Ohio St. 2d 1, 10. Further, consent for a warrantless search may be obtained from a person having common authority or other sufficient relationship to the premises, *United States* v. *Matlock* (1974), 415 U. S. 164, 171-172, 39 L. Ed. 2d 242, 249-250.

Here Charles Gavin is defendant's father and owner of the searched premises. Gavin's consent fits squarely within the rule permitting such search under the doctrine of *Carder* and *Matlock.*

The first assignment of error is not well taken in pertinent part.[3]

### III.

It is fundamental that the bias of a witness may be explored to test credibility. *Allen* v. *State* (1859), 10 Ohio St. 287, 306; *Tullis* v. *State* (1883), 39 Ohio St. 200, 202.

In a criminal case the spectre of bias materializes anytime the evidence indicates that the witness has potential trading assets to barter with the State. For instance, the potential is suggested whenever the witness is:

(1) a co-defendant, an accomplice or a suspect susceptible to charge in the case on trial or (2) under pending indictment in another case or a suspect susceptible to charge in another case or (3) serving time subject to executive commutation, pardon or parole.

In particular circumstances the possibility for bias may be so remote that it is an appropriate exercise of judicial discretion to exclude the evidence. A pending indictment in a foreign jurisdiction, or time being served there may provide such minor trading leverage that the issue becomes one of competence rather than weight. Remoteness is not an issue of concern in the present case. Here the

---

[3]But see fn. 2 on the subject of the *in limine* motion.

witness was under a pending indictment apparently in the same jurisdiction. *Pending* charges raise entirely different questions than those posed by stale indictments. An indictment is only a charge and it is the universal rule that a stale charge is irrelevant to credibility because the element of pressure is not there. A conviction may contain an echo of unreliability (unless it is very old, see *Luck* v. *United States* (D. C. Cir. 1965), 348 F. 2d 763, 768, and Rule 609, Ohio Proposed Rules of Evidence, June 1976) because of past miscreancy rather than current pressure. Some confusion has arisen when parties and courts in the thrall of the rule that only *convictions* not *indictments* are relevant to credibility fail to distinguish between obsolete indictments and pending ones. Current status implies the strong probability that the witness may trim his testimony for either the actuality or hope of State favor. Such favors may take the form of favorable plea bargains, disregard of possible charges or dismissal of a pending one, or immunization. Of course, the key factor is pendency.

In *State* v. *Hector* (1969), 19 Ohio St. 2d 167, a witness for the prosecution was asked about indictments pending against him in cases other than the case on trial. Objection to the question was sustained. The Supreme Court of Ohio reversed the conviction. The proposition of law ordering the practice in Ohio was set down in these terms:

"While ordinarily the credibility of a witness may be attacked by proof of conviction of crime, but not by proof of indictment, this rule is subject to the exception that a witness in a criminal case may be asked if he is under indictment for crime, if such fact would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely."

"* * * [E]vidence that criminal charges are then pending in the same court against a witness for the prosecution is a circumstance tending to show that the testimony of the witness is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he might be granted immunity or rewarded by leniency in the

disposition of his own case. *Alford* v. *United States* (1931), 282 U. S. 687, 75 L. Ed. 624, 51 S. Ct. 218; *People* v. *Demera* (1923), 64 Cal. App. 121, 220 P. 673; *People* v. *Dillwood* (1895), 4 Cal. Unrep. 973, 39 P. 438; *State* v. *Roberson* (1939), 215 N. C. 784, 3 S. E. 2d 277; *Commonwealth* v. *Mulroy* (1944), 154 Pa. Sup. 410, 36 A. 2d 337; *State* v. *Burpee* (1892), 65 Vt. 1, 25 A. 964, 19 L. R. A. 145.

"We hold, therefore, that the trial court erred in refusing to permit defense counsel to cross-examine witness Blackford as to any pending indictments against him. In view of the nature of Blackford's testimony, and in view of the nature of this case, we hold that such limitation of cross-examination was prejudicial to the rights of the defendant."[4]

In the instant case the witness was under indictment in an unrelated matter. The charge was the murder of a policeman. The current threat posed by the indictment was a potent biasing factor. At the beginning of the trial the court granted the prosecution's motion *in limine* to block any examination of the witness on the subject of pending indictments. The order effectively proscribed any questions to him on that aspect of his credibility.

There remains the strong possibility that his status might be shaped by his evidence. The jury was entitled to know whether he had or hoped for a promise of leniency in his own case for the tailoring of his testimony to suit the State's proof in the case on trial. The denial of cross-examination was prejudicial error affecting a substantial right of the defendant. Crim. R. 52(A). The second assignment of error is well taken.

## IV.

Defendant was charged with felonious assault, R. C.

---

[4]*State* v. *Hector, id* at 178-179. See *McCormick on Evidence* (2d ed., 1972) pp. 79-80. "*Self-interest* may be shown * * * in a criminal case when the witness testifies for the state and it is shown that an indictment is pending against him * * *." cf. *United States* v. *Padgent* (2 Cir., 1970), 432 F. 2d 701, 703-705.

2903.11.[5] The court properly rejected defendant's request for a charge on aggravated assault, R. C. 2903.12.[6] Proof of aggravated assault requires some evidence that the person caused or attempted to cause serious physical harm or physical harm to another "* * * while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force * * *." R. C. 2903.12.

The instant record contains no evidence whatsoever of any "extreme emotional stress" or "serious provocation."[7] For that reason the court properly overruled defendant's request for a charge on aggravated assault.

The third assignment of error is not well taken.

*Judgment reversed and cause remanded.*

CORRIGAN and KRENZLER, JJ., concur.

---

[5]The statute states:

"*Felonious assault.*

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree."

[6]The statute states:

"*Aggravated assault.*

"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree."

[7]We do not consider defendant's testimony of his "anger" at the Kaiser brothers for their role in a robbery of him one month prior to this shooting to be probative evidence relevant to proof of the serious provocation element in aggravated assault.