OPINION
OPINION
Defendant-appellant, Rodney Siler, appeals his conviction in the Mahoning County Common Pleas Court on one count of murder with a firearm specification.
On April 19, 1995, appellant along with Jamal Lancaster and Jamal North were riding around in a vehicle driven by Russell Starks. At 10:15 p.m. Officers Geraci and Frost of the Youngstown Police Department stopped the vehicle for failing to use a turn signal. The four men exited the vehicle as if they were going to flee and then stopped upon the officers' commands to do so.
Officer Frost observed a gun on the ground by the passenger door from which Jamal Lancaster had exited. Officer Frost recovered the gun and searched Lancaster. The search of Lancaster revealed a bag of marijuana. Officer Frost then handcuffed and placed Lancaster in the rear of the officers' cruiser. Lancaster became enraged and accused Starks of snitching on him. He yelled obscenities and threats. Lancaster then said something to appellant and appellant then fled the scene on foot. The officers concluded the stop at 10:25 p.m., allowed North and Starks to drive away, and transported Lancaster to the police station.
Starks and North drove around the corner but then returned to retrieve a coat appellant had left at the scene of the traffic stop. Starks and North then proceeded a short distance to North's home. Once at North's home, appellant approached the home shortly thereafter on foot. North and Starks met appellant outside the home and North handed appellant his jacket and money Lancaster had left in the vehicle. North and Starks indicated to appellant that Lancaster may have left some crack cocaine in the vehicle. The three approached Starks' vehicle. North went to the passenger's side of the vehicle and began looking through it. Appellant and Starks went to the driver's side. As North began looking through the vehicle, he heard a shot and saw Starks fall to the ground. North then observed appellant walking away and putting a gun into his pocket. When asked why he had just shot Starks, appellant responded that it was in retaliation for Starks' having "snitched" on Lancaster at the scene of the traffic stop.
North then went into the house and called 911. The police department received the call at 10:43 p.m. Officers were nearby and responded quickly. North directed the police to Starks' body. Starks lay dead with a fatal gunshot wound to the head. Initially, North told the police that it was a drive-by shooting involving a yellow Cadillac. Officers located the yellow Cadillac and determined that its occupants were not involved in the shooting.
Three weeks later, North revealed that Starks' death was not a result of a drive-by shooting, but instead told them that appellant was the shooter. At trial, North testified that he initially lied out of fear of the appellant. North indicated that he feared meeting the same fate as Starks if he were to have told the truth.
On June 23, 1995, a Mahoning County Grand Jury returned an indictment for appellant setting forth one count of murder, in violation of R.C. 2903.02 (A), with a firearm specification, and one count of carrying a concealed weapon, in violation of R.C. 292312 (A) On July 10, 1995, appellant filed a Notice of Alibi. The notice alleged that appellant was not at the scene of the murder when it occurred and listed three witnesses in support. The notice did not provide any specific information as to appellant's exact whereabouts at the time of the murder.
On July 11, 1995, the State filed a motion to dismiss appellant's Notice of Alibi. On July 20, 1995, appellant filed an Amended Notice of Alibi. The amended notice set forth with further specificity that appellant had fled the scene of the traffic stop to the home of Cycili Lancaster and that she transported him to his north side home.
On September 12, 1995, the trial court sustained appellant's August 28, 1995 motion to separate for trial the murder and carrying a concealed weapon charges. The murder charge proceeded to trial on September 11, 1995. On September 13, 1995, the jury returned a guilty verdict on the murder charge with a firearm specification. That same day, appellant withdrew his not guilty plea to the charge of carrying a concealed weapon and entered a guilty plea.
The trial court sentenced appellant to an indefinite term of imprisonment of fifteen years to life on the murder conviction and to a definite term of imprisonment of two years on the carrying a concealed weapon conviction. Appellant was also sentenced to three years actual incarceration for the gun specification to be served consecutively to and prior to the sentences imposed for the murder and carrying a concealed weapon convictions. This appeal followed.
Appellant alleges in his first assignment of error that:
 "THE EXCLUSION OF ALIBI TESTIMONY FOR THE DEFENDANT WAS ABUSE OF DISCRETION BY THE TRIAL COURT AND PREJUDICED THE DEFENDANT'S CASE."
Crim.R. 12.1 provides:
 "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
The Notice of Alibi filed by appellant on July 10, 1995 stated that appellant "was not at the scene of the crime located at 854 West Woodland Street, Youngstown, Ohio at the time the crime is alleged to have occurred." The notice further stated that, in support of the alibi, appellant intended to offer the testimony of Shante Gibbs, Louis Gibbs, and Ruby Gibbs.
On July 20, 1995, appellant filed an Amended Notice of Alibi which was consistent with the Notice of Alibi filed by appellant on July 10, 1995, but set forth with further specificity appellant's whereabouts at the time of the murder. The amended notice stated in relevant part:
 "On April 19, 1995, at approximately 2243, the victim, Russell Starks, was shot at 854 West Woodland Street, Youngstown, Ohio. At 2215, the Defendant and the victim were in the custody of Officer Garaci of the Youngstown Police Department at 428 West Delason Street. The Defendant fled the Officer on foot and ran to Cycili Lancaster's house, located at 823 W. Woodland Avenue and was transported to his north side home."
The amended notice further stated that, in support of the alibi, appellant intended to offer the testimony of Cycili Lancaster in addition to the testimony of those persons mentioned in the July 10, 1995 Notice of Alibi.
A review of the record reveals some confusion at trial relating to the issue of alibi testimony. The confusion arose during defense counsel's opening statement.
 "OPENING STATEMENT OF MR. TAYLOR: May it please the Court, counsel, members of the jury, now you have heard what the prosecutor believes the evidence will show. You have the responsibility now of waiting until you have heard both sides, both that of the prosecution and the defense, before deciding what really happened.
 "And the evidence will show that, indeed, Russell Starks was murdered, and murder is a heinous crime. But to compound that crime to convict an innocent man of a crime that he didn't commit. When you have heard all of the evidence, it will show that Rodney Siler was on his way to his northside home when this crime occurred on the southside of town.
 "MR. GESSNER: Objection, Your Honor. Can we approach the bench?
"THE COURT: Yes.
 "WHEREUPON, a side-bar conference was had out of the hearing of the jury.
 "MR. GESSNER: Your Honor, the defense has filed an alibi in this case, an alibi the defendant filed in this case. And he specifically stated and there was a second alibi, because the first alibi that was filed did not state the location. I specifically ask where he was. A second alibi or amended alibi was filed that said specifically the defendant was in the house, I believe, 23 Woodland Avenue. There have been no supplements to that alibi to say that he was on his way to his home. I asked that it be stricken, the last statement of counsel and counsel be prohibited from putting any alibi other than what they have notified the State of Ohio at the State's request.
 "THE COURT: Mr. Taylor? You can't change your alibi during trial. "MR. TAYLOR: Rule 12.1 specifically says that if, the interpretations of case law of 12.1 is clearly stated that if we have to adjust from what our alibi states, we can do so. And it's not an error.
 "MR. GESSNER: And if you had to adjust, you knew before you said it there. Why didn't I know. "MR. TAYLOR: This evidence that we're talking about, we discussed last night, myself and Mr. Lavelle, after discussing your conversation with Louis Gibbs or reference made to whomever it was, references made that Mr. Gibbs made certain statements that I was not aware of. Mr. Gibbs is a witness identified for alibi, Your Honor.
 "MR. GESSNER: As far as the statements to Mr. Gibbs that I made to you is that a witness said that Mr. Gibbs made statements as to one of my witnesses, knowing about the fact that the defendant was not at the address that you have given me through your alibi as to where he was. The only thing we had about him riding in a car was through the witness, Cicily Lancaster, who you told me basically lied to you and lied to me.
 "MR. TAYLOR: Who said he was riding in the car?
"MR. GESSNER: Cicily Lancaster.
 "MR. TAYLOR: There was nothing in the alibi to that.
 "MR. GESSNER: That's what you just said in front of the jury. "MR. TAYLOR: I said that he was on his way. He arrived. He left the arrest scene on foot and arrived at the home, as far as we know on foot. We don't even know. I have a witness to testify.
 "MR. GESSNER: I just ask that the defense be instructed to follow their alibi.
 "THE COURT: Doug, it's not that I like doing this, but you're limited to what you filed with the Court. And what you discussed last night puts the prosecutor at disadvantage. You posed the alibi, his defense to this case. You can't change your alibi on the course of the trial. I'm not going to allow you to discuss anything other than what you have filed in your alibi, okay. Exceptions to you. "MR. TAYLOR: Okay, Your Honor.
 "THE COURT: Ladies and gentlemen, the Court instructs you to disregard the statements made by defense counsel just prior to us having a side bar conference, and more particularly as to the destination and/or stated travel of the defendant just subsequent to this crime. Please proceed." (Tr. 17-20)
Appellant's trial counsel then continued with his opening statement, making no further mention of an alibi defense.
In his opening statement, appellant's trial counsel stated that the evidence would show that appellant "was on his way to his northside home when this crime occurred on the southside of town." (Tr. 17). This was the statement which drew an objection from the prosecutor and initiated the confusing sidebar. However, this statement clearly was not inconsistent with the Amended Notice of Alibi filed by appellant on July 20, 1995.
Appellant correctly notes that the court incorrectly instructed the jury to disregard the statements made by his trial counsel as to the "destination and/or stated travel of the defendant just subsequent to the crime." (Tr. 20). The court gave this instruction based on its misconception that appellant was attempting to change his alibi in the course of the trial. Appellant was not attempting to make any change to his alibi and the statement of appellant's trial counsel, as indicated earlier, was entirely consistent with the July 20, 1995 Amended Notice of Alibi.
Appellant further attempts to characterize the court's instruction to the jury as a ruling by the court flatly prohibiting or excluding any of appellant's alibi testimony. Appellant goes so far as to say that the court "prevented the Appellant from offering the testimony of alibi witnesses who had said that the Appellant was, in fact, on his way home." (Appellant's Brief, p. 6)
Although the court's instructions to the jury were premised on the misconception that appellant was attempting to change his alibi, appellant misconstrues the nature and effect of that instruction. Just prior to the instruction to the jury, the court advised appellant's trial counsel that it was not going to allow him to discuss anything ""other than" what appellant had filed in his notice of alibi. (Tr. 20). Consequently, the court was not prohibiting appellant from pursuing the filed alibi.
Subsequently, appellant's trial counsel made no attempt to further clarify the alibi in his opening statement. Also, appellant never offered or attempted to offer the testimony of any of the witnesses listed in the Amended Notice of Alibi. Rather than operating under the belief that the alibi testimony was prohibited or excluded, it seems more likely that appellant and his trial counsel made a strategic decision not to pursue the filed alibi. Perhaps indicative of this decision is the revelation at sidebar that Cicily Lancaster, the primary witness named in appellant's filed alibi, had been less than truthful. (Tr. 19)
Furthermore, the record reveals that appellant was able to and did, in fact, pursue an alibi defense. Savannah Siler, appellant's mother, testified that appellant arrived at her house at approximately 10:55 p.m. on the evening of the murder. (Tr. 166). She also testified that it would take approximately 20 minutes to get from the south side of town, near where the murder occurred, to the north side of town where she lives. (Tr. 168). Therefore, if the jury had found this testimony reliable and credible, appellant would have to have left the murder scene at 10:35 p.m., eight minutes prior to the call to the police notifying them of the murder.
Accordingly, appellant's first assignment of error is without merit.
Appellant alleges in his second assignment of error that:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT OVERRULED DEFENSE COUNSEL'S OBJECTION WHEN THE PROSECUTING ATTORNEY ENGAGED IN PROSECUTORIAL MISCONDUCT IN COMMENTING ON AN ALIBI THAT THE COURT PREVIOUSLY RULED THE DEFENDANT COULD NOT PRESENT."
The misconduct appellant complains of came during the prosecutor's cross-examination of Savannah Siler, appellant's mother. The relevant testimony went as follows:
 "Q Ma'am, are you aware of the fact that your son has filed an alibi with this Court that at 10:43 —
"MR. LAVELLE: Objection.
"THE COURT: Overruled.
 "Q 10:43 that night he was on Woodland Avenue; he was at 823 West Woodland, at Cicily Lancaster's house?
 "A No, I didn't, never seen the report that he filed." (Tr. 168)
Appellant argues that the prosecutor's remarks relating to the filed alibi were improper since the court prohibited appellant from pursuing the filed alibi. Appellant argues that the remarks resulted in the jury being made aware of the fact that he had filed an alibi but were subsequently left wondering why one was never presented. Appellant argues that these circumstances resulted in prejudice to his case.
The test for prosecutorial misconduct is whether the prosecutors remarks are improper and, if so, whether those comments prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165. The Supreme Court has held that the touchstone of a due process analysis in a case of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. SeeSmith v. Phillips (1982), 455 U.S. 209, 219.
The prosecutor's remarks regarding the notice of alibi appellant filed with the court were not improper. Appellant properly filed a notice of alibi with the court prior to trial and alluded to that alibi in opening statement. As we indicated under appellant's first assignment of error, the court did not prohibit appellant from pursuing the filed alibi. In contrast, appellant was able to and did present an alibi defense. The alibi defense appellant presented at trial consisted of testimony from his mother. This alibi was entirely inconsistent with the filed alibi. The result was an alibi presented at trial of which the prosecution had no notice as is required by Crim.R. 12.1. Therefore, it was not improper for the prosecutor to bring this inconsistency to light.
Accordingly, appellant's second assignment of error is without merit.
Appellant alleges in his third assignment of error that:
 "THE TRIAL COURT ERRED TO THE APPELLANT'S PREJUDICE WHEN IT PREVENTED THE APPELLANT FROM PRESENTING EXHIBITS TO SHOW BIAS ON THE PART OF THE PROSECUTIONS' MAIN WITNESS."
The error appellant complains of under this assignment of error arose at the close of appellant's case in chief. After a discussion was had among the court and counsel off the record and out of the hearing of the jury and court reporter, appellant's trial counsel made the following proffer:
 "I proffer to admit the complaint and Judgment Entry of case number 95-JUV-626 in the Court of Common Pleas, Juvenile Division, which is a complaint and Judgment Entry representing the juvenile, Jamal North, a charge of complicity to aggravated robbery and carrying concealed weapon. And the Judgment Entry is a representation of the dismissal of that charge on 27 June, 1995. I want to proffer a transcript of the proceedings of that dismissal and this is a certified copy of the transcript, wherein, it represents that the dismissal was in exchange for his cooperation with the police and testifying at grand jury against the defendant in this case. These exhibits are offered to show bias on the part of Jamal North. Not to impeach his credibility. And the Judge overruled my motions." (Tr. 191-192)
Evid.R. 616 provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence. A trial court has wide discretion to exclude or admit evidence and an appellate court will not disturb its ruling absent an abuse of discretion which amounts to prejudicial error.State v. Graham (1979), 58 Ohio St.2d 350; State v. Lundy (1987).41 Ohio App.3d 163.[1] An appellate court finds abuse of discretion only when it determines that the trial court's attitude was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151, 157. A trial court's decision to admit any evidence is guided by a determination of whether or not it is relevant. Evid.R. 401, 402. Evidence may be relevant but not admissible on the grounds that its probative value does not outweigh "the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403.
Appellant relies on Keveney v. State (1923), 109 Ohio St. 64,66, and State v. Gavin (1977), 51 Ohio App.2d 49, 53., for the proposition that it is error for the trial court to exclude evidence of charges pending against a witness when offered by the defense in order to demonstrate bias on the part of the witness. These cases are distinguishable from the instant case in that there were no charges pending against North — they had been dismissed.
Appellant relies on Davis v. Alaska (1974), 415 U.S. 308k in support of his argument that exclusion of the proffered exhibits violated his Sixth Amendment right to confront the witness North. The issue in Davis was whether the Sixth Amendment right of confrontation of a witness required that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias derived from the witness' probationary status as a juvenile delinquent in the face of the State's asserted interest in preserving the confidentiality of juvenile delinquency adjudications. The United States Supreme Court answered this question in the affirmative.
In the present case, appellant's trial counsel never sought introduction or admission of the proffered exhibits during cross-examination of the witness North. Counsel never questioned North regarding the exhibits or his probationary status. Therefore, the fact that appellant never asserted his Sixth Amendment right to confrontation distinguishes his situation from that presented inDavis.
After reviewing the evidence proffered by appellant at trial, we conclude that it was not an abuse of discretion for the court to have excluded it. The transcript proffered by appellant refers to testimony given by North, but fails to identify the case, the name, or the matters to which he testified.[2] The transcript does not clearly indicate that a "deal" was struck whereby North was offering testimony in
Accordingly, appellant's third assignment of error is without merit.
Appellant's fourth assignment of error alleges that:
 "APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE EVIDENCE SUPPORTING CONVICTION WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE CONVICTION BEYOND A REASONABLE DOUBT."
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Smith, supra at 113.
Appellant was convicted of murder in violation of R.C. 2903.02
(A). That section states in relevant part that "[n]o person shall purposely cause the death of another."
Appellant argues that the only evidence linking him to the crime, the testimony of Jamal North, was neither credible or reliable. Appellant stresses that North changed his story only after an altercation occurred between appellant and North's aunt. Additionally, appellant argues that North testified against appellant in exchange for a dismissal of pending criminal charges. (See discussion under Appellant's Third Assignment of Error, supra)
North was the state's key witness. North was witness to the events leading up to and including the murder of Russell Starks and testified as follows. After returning to North's home from the scene of the traffic stop, North and Starks met appellant outside. North handed appellant his jacket and money Lancaster had left in Stark's vehicle. North and Starks indicated to appellant that Lancaster may have left some crack cocaine in the vehicle. The three approached Starks vehicle. North went to the passenger's side of the vehicle and began looking through it. Appellant and Starks went to the driver's side. As North began looking through the vehicle, he heard a shot and saw Starks fall to the ground. North then observed appellant walking away and putting a gun into his pocket. When asked why he had just shot Starks, appellant responded that it was in retaliation for Starks' having snitched on Lancaster at the scene of the traffic stop.
Our review of North's testimony is guided by the principle that "the credibility of the witnesses [is] primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Regarding appellant's assertion that North testified in exchange for a dismissal of pending criminal charges, we resolved that issue adversely to appellant under his third assignment of error.
Appellant's argument, while focusing on the credibility and reliability of the direct evidence, ignores the rule that circumstantial evidence inherently possesses the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Appellant's behavior at the scene of the traffic stop was circumstantial evidence indicative of guilt. Officer Geraci testified that Lancaster, after being arrested and placed in the back of the police car, yelled to the other three, "Kick that nigger's ass; I'm going to take care of that nigger later. Take these cuffs off me a minute." (Tr. 45) Geraci also testified that Lancaster's statements were in the tone of an order. Therefore, it was entirely reasonable for the jury to infer, based on appellant's behavior at the scene of the traffic stop, that appellant took Lancaster's statements as an order to appellant to take some sort of revenge on Stark.
Viewing the circumstantial evidence and the direct evidence (i.e., North's testimony) together and in a light most favorable to the prosecution, a rational trier of fact could have reasonably concluded that appellant purposely caused the death of Starks beyond a reasonable doubt.
Accordingly, appellant's fourth assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., dissents; see dissenting opinion.
Waite, J., concurs.
APPROVED:
 ___________________________________ Gene Donofrio Judge
[1] Note also that relative to the admission of evidence going to the impeachment or credibility of a witness, a trial court is afforded wide discretion, in part, because such evidence is collateral to the principal issue at trial and leads inquiry into unrelated matters. O'Brien v. Angley (1980), 63 Ohio St.2d 159,163; Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 222.
[2] This court took up a similar issue involving Evid.R. 616 in State v. Bereschik (1996), 116 Ohio App.3d 829, 836. After considering the argument of counsel and reviewing the testimony of the witness, this court stated that it was difficult to determine what the witness was trading with the prosecution that would result in bias on his part and went on to find no error. exchange for the dismissal of charges. The juvenile court noted on the record that the charges against North were being dismissed based on a recantation by the purported victims and insufficient evidence. Moreover, our conclusion is supported by the fact that appellant never sought introduction or admission of the proffered exhibits during the presentation of his case in chief or during the examination of North.