JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Preston Fayne (Fayne) appeals from the judgment of the trial court which, following a jury trial, found him guilty of felonious assault. For the reasons set forth below, we affirm appellant's convictions.
 {¶ 2} On March 27, 2007, appellant was indicted on four counts with the following: count one, aggravated robbery, in violation of R.C. 2911.01(A)(1), with firearm specifications; count two, aggravated robbery, in violation of R.C. 2911.01(A)(3), with firearm specifications; count three, felonious assault, in violation of R.C. 2903.11(A)(2), with firearms specifications; and count four, having a weapon a weapon while under disability, in violation of R.C. 2923.13. The first three counts included one-and three-year firearm specifications, notice of prior conviction, and repeat violent offender specifications. The fourth count set forth one-and three-year firearm specifications.
 {¶ 3} Prior to trial, appellant elected to have count four, having a weapon under disability, and its accompanying one-and three-year firearm specifications heard to the bench, along with the notice of prior conviction and repeat violent offender specifications accompanying any count on which the jury found him guilty.
 {¶ 4} The case proceeded to jury trial on May 7, 2007. On May 10, 2007, the jury returned a finding of guilty on the felonious assault count and the accompanying one-and three-year firearm specifications. *Page 4 
 {¶ 5} The court found Fayne guilty of having a weapon under disability and the accompanying specifications. Not guilty verdicts were returned by the jury on the first and second counts.
 {¶ 6} On May 23, 2007, the trial court sentenced appellant on counts three and four, and on their respective specifications. He received an aggregate prison sentence of twenty-one years. The one-and three-year firearm specifications merged on each of counts three and four. Appellant was sentenced to three years on firearm specifications and five years on repeat violent offender specifications, ordered to be served prior to and consecutive to each other, and eight years on the base charge of felonious assault.
 {¶ 7} Appellant was sentenced to three years on the firearm specification to be served prior to and consecutive with five years imposed on the base charge of having a weapon while under disability. The firearm specifications of counts three and four merged. The sentences under counts three and four were ordered consecutive to each other. Five years of mandatory postrelease control was also ordered.
 {¶ 8} The facts giving rise to this appeal are as follows:
 {¶ 9} In the early morning hours of January 20, 2007, Janice Wilson (Wilson) was leaving her place of employment at Rally's (Rally's), a fast-food restaurant on Euclid Avenue in East Cleveland, Ohio, along with her co-worker, D'Andre Flake (Flake). Wilson planned on catching a 3:30 a.m. bus home. Flake was met by Karen Osborn (Osborn), also an employee of Rally's, but not working that evening. Flake *Page 5 
and Osborn intended to walk to the Windemere rapid station, which was north of Euclid Avenue.
 {¶ 10} Although not on their direct route, Flake and Osborn crossed Euclid Avenue with Wilson to accompany her to the bus stop, which was on the south side of Euclid Avenue near the corner of Van Buren Avenue. The three had been standing at the bus stop for approximately five minutes when a man approached Wilson and stated "you know what it is," and hit her hard on the head. She testified that he hit her with a hard, blunt object that he had hidden in the sleeve of his coat. The blow caused her head to split open and blood to run into her eyes. He did not attempt to take anything from her or her two co-workers. The assailant immediately passed through them and ran down Euclid Avenue in a westerly direction toward the East Cleveland police station, located at the corner of Euclid and Beersford Avenues, almost directly across the street from Rally's.
 {¶ 11} Wilson testified that, prior to the attack, she noticed that the assailant was a light-skinned, older, black man who wore a small "grayish blackish" hat that looked like a child's hat that was too small for his head. Wilson further testified that the assailant was of regular build and was taller than she was. Wilson testified that the attacker appeared to her to be a "dusty old crack head," with a disheveled appearance and salt-and-pepper facial hair.
 {¶ 12} Flake testified he was about five feet away from Wilson at the bus stop when he saw a man come up and say "you know what it is" to Wilson. He saw the *Page 6 
man strike her with a metal object. He ran after the man in the direction of the police department. Flake further testified that the attacker was wearing a skull cap and a tight-fitted, black, leather dress jacket. Flake chased the assailant west on Euclid Avenue, and then south down Beersford Avenue, which runs perpendicular to Euclid Avenue. Flake stopped pursuing him on Beersford Avenue when he saw the attacker hold out his hands, as if showing him a gun.
 {¶ 13} Flake called the police on his cell phone and gave a description of the male as he was chasing him. In the meantime, Osborn took Wilson to the police station, where she was treated by paramedics. Wilson did not seek any further medical treatment.
 {¶ 14} Osborn testified that the man was "laughing like he was high" as he approached them at the bus stop and then said to Wilson "you know what it is." Osborn understood that to mean he was going to rob Wilson. Osborn further stated that, when Wilson asked the attacker if she knew him, he pulled out a gun and hit her with it. She knew it was a gun because she saw "the little hole in the barrel." She identified the weapon presented at trial as the one she saw that evening. She indicated that she only saw a part of the gun, which included the nose of the gun. Osborn indicated that the assailant was wearing a tight, leather jacket with a distinctive print, navy-blue boots, and a gray skull cap with a line running through it. Osborn described the attacker as having medium-brown complexion with gray and black facial hair around his mouth. *Page 7 
 {¶ 15} East Cleveland police officer, Tiffany Cleveland (Cleveland), testified that she was at the police station the morning of January 20, 2007, when she received a dispatch call at approximately 3:15 a.m. to respond to a robbery of three individuals on Euclid Avenue. She called for backup to assist her since she had been informed by dispatch that the suspect had a shotgun. She was joined by fellow officer Charles Battle (Battle). Both officers testified that they noticed fresh tracks in fresh snow on the ground that night. Each print contained a large circular pattern in the middle of the footprint. Cleveland testified that they appeared to be fresh snow-boot tracks which ran along the lawns and the driveways of the houses on Marloes Avenue, about four or five houses up from Euclid Avenue.
 {¶ 16} The officers followed the footprints to an open lot at the end of Marloes Avenue, where the tracks went around the lawns to a fence in the back of the yard. The fence separated the rear yards of the houses on Marloes Avenue and Beersford Avenue.
 {¶ 17} Cleveland drove to the next street and Battle jumped the fence. Cleveland saw from that vantage point that the tracks went across through the yard and up to the back door of 1895 Beersford Avenue.
 {¶ 18} The officers established a perimeter of the house and Cleveland knocked on the door. She explained to whoever opened the door that the officers had followed prints to the back door of the residence after receiving a dispatch about an incident that had occurred on Euclid Avenue. She told the three men who were in the house to *Page 8 
exit the house. The three men who exited were the resident, Clifford Fayne, his son, who was in his early twenties, and Clifford Fayne's brother, Preston Fayne. They were placed in a police vehicle in the driveway of 1895 Beersford Avenue.
 {¶ 19} Battle had located a Nike skull cap, a leather jacket, and boots with wet soles in the second floor hallway of the residence. No weapon was found in the house. He gave the boots to officer Cook (Cook).
 {¶ 20} The weapon, State's exhibit 2, was found a week later by a woman who was breaking up ice in her driveway, two houses north of where the officers learned the male had run between two houses at 1853 Beersford Avenue. (Tr. 316.) It is uncontroverted that there was no direct testimony linking the weapon to Preston Fayne.
 {¶ 21} Cook testified that the deep treads as well as two circular designs on the soles of the boots matched the distinctive footprints in the snow, which he testified were going from south to north, skirting the houses on Marloes Avenue. Cook picked up the prints halfway down Marloes Avenue, southbound towards Terrace. The lone prints led up to a ten-to-twelve foot chainlink fence, then over the fence into an open lot, and then to another smaller chainlink fence, into a rear yard. They then led to the back door of 1895 Beersford Avenue. He took two photographs of the prints which were directly in front of the second chainlink fence, in the far backyard of Clifford Fayne's residence. They were introduced into evidence as State's exhibits 11 and 12. *Page 9 
 {¶ 22} Cleveland testified that she brought Flake in a police vehicle to 1895 Beersford Avenue. Flake positively identified Preston Fayne as the man who was involved in the attack at the bus stop. (Tr. 486.)
 {¶ 23} Cleveland took Flake back to the police station and proceeded to take oral statements from Flake, Osborn, and Wilson. Cleveland testified that all three positively identified Preston Fayne as the assailant. (Tr. 490, 491.)
 {¶ 24} Although both Wilson and Flake identified Fayne as the assailant on the day in question, they were ambivalent and unable to identify him on the date of trial, May 8, 2007. (Tr. 337-338, 363-365.) Osborn testified that Wilson and Fayne were under a bright light and that she had an opportunity to look at the attacker. Osborn identified State's exhibits 7, 8, and 9, the gray skull cap with a line, the jacket, and blue boots, as the items worn by Fayne the morning of the attack of Wilson. (Tr. 442.) She identified Wilson's assailant as being depicted in a State's exhibit 10, a photograph of Preston Fayne, stating that it fairly and accurately depicted the way he looked on January 20, 2007. (Tr. 444.) She further testified she was able to identify Fayne at the lineup with his hat on and off. (Tr. 463.) Osborn also stated that the officers asked her to look at individuals in a room with Flake and Osborn, without police officers present, and she identified the assailant as Fayne three different times.
 {¶ 25} Appellant timely appealed his conviction and submits five assignments of error for our review. *Page 10 
 {¶ 26} The first two will be addressed together as they are closely related in facts and law. They state as follows:
 {¶ 27} ASSIGNMENT OF ERROR ONE
"THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT BEYOND AREASONABLE DOUBT."
 {¶ 28} ASSIGNMENT OF ERROR TWO
"THE CONVICTION OF APPELLANT WAS AGAINST THE MANIFEST
 WEIGHT OF THE EVIDENCE."
 {¶ 29} In his first assignment of error, Fayne argues that the trial court erred in denying his motion for acquittal because his conviction was not supported by sufficient evidence. In his second assignment of error, he contends that his conviction was against the manifest weight of the evidence. Fayne's discussion as to both of these assignments is limited to the jury verdict finding him guilty of felonious assault and, hence, we also limit our review of these assignments as to the jury's verdict on count three, felonious assault. As these arguments involve different standards of review, but involve a review of the same evidence, we discuss them together.
 {¶ 30} The standard of review for sufficiency of evidence is set forth in the seminal case of State v. Bridgeman (1978), 55 Ohio St.2d 261.
 "Pursuant to Criminal Rule 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. *Page 11 
 {¶ 31} We noted in State v. Bradley, Cuyahoga App. No. 87024,2006-Ohio-4589, that "Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259
* * *." The Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Bradley at ¶ 12. (Citation omitted.)
 {¶ 32} According to State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, the standard in reviewing weight of the evidence challenge is a distinct legal concept both quantitatively and qualitatively different from the sufficiency standard. Thompkins further described this standard as follows:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis in original.)
 * * * `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387. (Internal citations omitted.)
 {¶ 33} The essential elements of felonious assault charged against Fayne are set forth in R.C. 2903.11, which provides: *Page 12 
 "(A) No person, shall knowingly do either of the following:
 "(1) Cause serious physical harm to another or to another'sunborn;
 "(2) Cause of attempt to cause physical harm to another or toanother's unborn by means of a deadly weapon or dangerousordnance."
 {¶ 34} With regard to Fayne's challenge to the sufficiency of the evidence, he argues that neither Wilson nor Flake could identify the man who assaulted her. However, the third witness, Osborn, stated she saw the assailant clearly and could describe his clothing in detail. Her testimony regarding the identification of Fayne was detailed and consistent from the date of the attack to her testimony at trial.
 {¶ 35} Fayne also argues that there was no credible testimony that he ever used a dangerous ordnance or firearm. Although there was no direct evidence placing the recovered shotgun in Fayne's hand, we do not agree with his contention that all the individuals at the scene did not see the assailant with a gun. Osborn clearly testified that she saw him hit Wilson on the head with a shotgun. In State v. Martin (1993), Cuyahoga App. No. 64421, 1993 Ohio App. LEXIS 5870, we found a handgun used to "pistol whip" another to be a deadly weapon as defined in R.C. 2923.11(A).
 "[A]ny instrument, device, or thing capable of inflicting death, and designed or specifically adopted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 36} Fayne also argues that there is insufficient evidence to find that there was "serious physical harm" inflicted upon the victim because Wilson testified that she refused medical attention beyond that administered by the paramedics. However, an *Page 13 
attempt to cause physical harm by means of a deadly weapon is sufficient to constitute felonious assault under R.C. 2903.11(A)(2). Further, "[t]he prosecution is not required to establish defendant caused any type of `physical harm' to the victim to support a conviction for felonious assault. Rather, an attempt to cause physical harm by means of a deadly weapon or dangerous ordnance is sufficient to constitute felonious assault under R.C. 2903.11(A)(2)." State v. Brown (1994),97 Ohio App.3d 293, 299.
 {¶ 37} In light of the foregoing, we cannot say that after viewing the evidence in the light most favorable to the prosecution, that Fayne's conviction for felonious assault was unsupported by sufficient evidence.
 {¶ 38} With regard to Fayne's challenge to the weight of the evidence, in addition to the previously cited standard of review, we are also mindful of the following:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." Thompkins at 387. (Internal citations omitted.)
 {¶ 39} Furthermore, credibility of witnesses and the weight to be given to their testimony are primarily matters for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. A jury is entitled to believe or not to *Page 14 
believe the State's witnesses and/or the defense's witnesses. State v.Antill (1964), 176 Ohio St. 61.
 {¶ 40} Acknowledging the foregoing, we are unable to state that the evidence weighs heavily against Fayne's conviction or that the jury lost its way in convicting him. Osborn credibly testified that Fayne hit Wilson on the top of her head with a deadly weapon, to wit: a gun, and by doing so attempted to cause Wilson physical harm. As was the case inState v. Eley (1978), 56 Ohio St.2d 169, in order to establish the particular aggravating element of the crime, the facts only need to demonstrate an attempt to inflict the result, in this case, physical harm as defined in R.C. 2901.01(A)(3), "as any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 41} Though Fayne argues that his conviction is against the manifest weight of the evidence, we find that the trier of fact was in the best position to weigh the evidence and the credibility of the witnesses. The jury believed the testimony of Osborn, and we cannot disagree with their verdict. As the reviewing court, we find that the trier of fact did not lose its way. It did not create a manifest miscarriage of justice by convicting Fayne of felonious assault with a deadly weapon under R.C. 2903.11(A)(2), as evidence was presented by the State as to each and every element of that offense.
 ASSIGNMENT OF ERROR THREE *Page 15 
 "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN PERMITTING THEUNRELIABLE IDENTIFICATION TESTIMONY."
 {¶ 42} Fayne claims that witnesses, including the victim's ability to identify her assailant, had been tainted by suggestive identification procedures when the witnesses were told by the police that they had a suspect in custody on Beersford Avenue. He further contends that being placed in a lineup in which he was the only light-skinned African-American male next to two men in the lineup that had darker complexions than he, tainted the identifications by Wilson, Flake, and Osborn, producing unreliable identifications.
 {¶ 43} The defendant bears the burden of establishing that the identification procedure was unreliable under the totality of the circumstances and "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v.Biggers (1972), 409 U.S. 188, quoting Simmons v. United States (1968),390 U.S. 377, 384.
 {¶ 44} The Ohio Supreme Court has held however that "identifications made subsequent to impermissibly suggestive procedure are admissible where the identification itself is nevertheless deemed reliable. `The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive.'" State v. Garner, 74 Ohio St.3d 49, 61, 1995-Ohio-168. (Internal citations omitted.) *Page 16 
 {¶ 45} As recently stated by this court in State v. Segines, Cuyahoga App. No. 89915, 2008-Ohio-2041:
 "A court must consider the following factors with regard to potential misidentification: `the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *.' The court must review these factors under the totality of the circumstances. Even if the `identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification.'" Id. at f 45. (Internal citations omitted.)
 {¶ 46} Wilson and Flake retracted their January 20, 2007 identification of Fayne. However, Osborn had the opportunity to view the assailant within less than ten feet of the victim's position at the bus stop. She testified that the area was well lit under the street lamp. Osborn was paying attention to the assailant as she saw him go around the corner and then come back to the area of the bus stop laughing. Her description of the assailant to the police was detailed and did not vary from the first time she reported it to the police at the police station. Osborn never equivocated in her description of the confrontation with the assailant and her identification of Fayne as the assailant. She described it all in detail with certainty and consistency. She provided a detailed description of the assailant and his clothing to the police. Lastly, as to the length of time between the crime and the lineup of assailant at the police station, it was a matter of hours in the same early morning period. *Page 17 
 {¶ 47} The totality of the circumstances reflects that the identification of Fayne by Osborn was the result of her clear and reliable observations at the time of the crime. The trial court did not err in permitting the introduction of what appellant contends was unreliable identification testimony.
 {¶ 48} This assignment of error is without merit and is overruled.
ASSIGNMENT OF ERROR FOUR
"THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GIVE A JURYCHARGE OF ASSAULT AND/OR AGGRAVATED ASSAULT."
 {¶ 49} Aggravated assault was not an appropriate charge because there was no evidence whatsoever that the appellant was under extreme emotional stress brought on by substantial and adequate provocation caused by the victim. See State v. Jackson (1992), 82 Ohio App.3d 667;State v. Gavin (1977), 51 Ohio App.2d 49. The evidence showed that this was an unprovoked attack on Wilson by Fayne.
 {¶ 50} Assault under R.C. 2903.13(A) is a lesser included offense of felonious assault under R.C. 2903.11(A)(2). State v. Goodwin (1995), Montgomery App. No. 14269, 1995 Ohio App. LEXIS 203. Even where an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Koss (1990), 49 Ohio St.3d 212, 218; State v.Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus;State v. Kidder (1987), 32 Ohio St.3d 279. *Page 18 
 {¶ 51} A court must view the evidence in a light most favorable to the defendant when deciding whether to instruct the jury on a lesser included offense. State v. Wilkins (1980), 64 Ohio St.2d 382, 388. Since a trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense, an appellate court will not reverse that determination absent an abuse of discretion. State v. Wright, 4th Dist. No. 01 CA2781, 2002-Ohio-1462.
 {¶ 52} The distinguishing element between felonious assault, in violation of 2903.11(A)(2), and assault, in violation of R.C. 2903.13(A), is whether the assailant used a deadly weapon. State v.Gunther, (1998) 125 Ohio App.3d 226, 239-240.
 {¶ 53} In construing the evidence in favor of Fayne, we cannot say that the jury could have found that he committed an assault without "a deadly weapon or dangerous ordnance." The consistent testimony of all witnesses, including that of the victim, Wilson, was that she was hit on the head with a hard, blunt object that was not plastic or rubber. Wilson testified that "[i]t had to be something with oomph." (Tr. 329.) Flake testified that the assailant hit Wilson with a black, metal object. Osborn testified that Flake hit Wilson on the head with a gun. Such a hard, blunt object fits the definition of deadly weapon, which is a "thing which death or serious injury can be easily or readily produced." State v. Ovlett (1975), 44 Ohio Misc. 7, 9. As we stated inState v. Prince (1992), Cuyahoga App. No. 61342, 1992 Ohio App. LEXIS 5844, "[a]ny instrument which through human control is the means of inflicting a blow may *Page 19 
be a deadly weapon, viz., any instrument so used as likely to produce death or great bodily harm." Id.
 {¶ 54} The jury could not have found appellant guilty of simple assault when all testimony adduced at trial demonstrated he used a hard, blunt, metal object to hit Wilson on the head in an attempt to cause serious injury to her.
 {¶ 55} This assignment of error is without merit and is overruled.
ASSIGNMENT OF ERROR FIVE
"APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 56} Fayne contends that his trial counsel was ineffective for two reasons. He argues his counsel was ineffective for failing to object to what he contends was unreliable identification testimony, and secondly, he contends counsel failed to request a charge instructing the jury on a charge of assault and/or aggravated assault.
 {¶ 57} Despite the fact that these two issues are different, an appellate court applies the same two-pronged analysis when reviewing an ineffective assistance of counsel claim.
 {¶ 58} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) "that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the *Page 20 
`counsel' guaranteed the defendant by the Sixth Amendment."Strickland at 687. To establish prejudice "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley at 143.
 {¶ 59} In determining whether counsel's performance fell below an objective standard of reasonableness, "judicial scrutiny of counsel's performance must be highly deferential." Strickland at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 60} Fayne first argues that his defense counsel was ineffective because he failed to object to the admission of what he describes as unreliable identification testimony.
 {¶ 61} Even assuming defense counsel's failure to challenge identification testimony fell below an objective standard of reasonable representation, we cannot conclude, that were it not for this alleged error, the result of the trial would have been any different. Despite the fact that two of the three witnesses could not identify the defendant at trial, Osborn, who had a clear opportunity to view the defendant, testified without equivocation that Fayne was the assailant who hit Wilson on the head with a gun. Given her unwavering identification of Fayne and her testimony describing the gun that he used to hit Wilson, we cannot say that alleged defense error in failing to *Page 21 
object to identification testimony deprived Fayne of a fair trial whose result is reliable. The outcome of the trial would not have been any different if the testimony regarding the identification process at the police station had not been introduced at all.
 {¶ 62} Fayne also contends that defense counsel was ineffective because he failed to ask the court to provide a jury instruction including assault and/or aggravated assault. As previously stated, we have found that Fayne's conviction was supported by the manifest weight of the evidence and that the trial court did not commit any error in failing to include jury instructions on assault and/or aggravated assault. Given these determinations, the failure of counsel to request such instructions did not rise to the level of plain error. Fayne has failed to show that, but for this alleged error on the part of his trial counsel to request the court to provide these jury instructions, the outcome of his trial clearly would have been otherwise. See State v.McClain, Cuyahoga No. 77740, 2002-Ohio-2349.
 {¶ 63} This assignment of error is without merit and is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. *Page 22 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR *Page 1