**UNITED STATES, Appellant,**

v.

**Anthony J. BRISTOL and Rickey R. Abney, Appellees.**

**No. 7943.**

District of Columbia Court of Appeals.

Argued June 26, 1974.

Decided Sept. 10, 1974.

---

Albert H. Turkus, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Raymond Banoun and Frederick C. Moss, Asst. U. S. Attys., were on the brief, for appellant.

Walter J. Smith, Jr., Washington, D.C., appointed by this court, for appellee Bristol.

James L. Lyons, Washington, D.C., appointed by this court, for appellee Abney.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

In this government appeal [1] we are asked to determine whether the trial court erred in granting appellees' motions to dismiss an indictment based upon former jeopardy. We conclude that the sua sponte declaration of mistrial by the first trial judge was not based upon manifest necessity. Therefore, a subsequent trial was precluded, and we affirm.

On March 2, 1973, two men broke into an apartment and robbed an individual at gunpoint. Appellees were arrested and charged with various offenses arising from the incident.

On the first scheduled trial date a preliminary matter was raised by Abney's trial counsel concerning certain supoenas previously issued. A conflict between counsel and the judge resulted from the judge's opinion that the subpoenas were an "11th hour and 59th minute" request. Subsequent to a discussion on the matter, that judge recused himself and certified the case to another judge. [2]

Later that same day a similar discussion ensued with a second judge and, by request of Abney's counsel, the second judge recused himself and certified the case to a third judge. The second judge had a similar concern over the late request for subpoenas and stated, in part:

What do you mean the earliest you could get to it? Are you telling us that you were ineffective in representing the defendant and that you couldn't issue a subpoena for these tapes until Friday, three days before the trial . . . ?

Trial before the third judge commenced late the same day. Learning that two other judges had recused themselves, this judge requested that counsel talk "seriously" to their clients about pleading guilty. The judge stated, "I would not be worrying about the trial in this case, I would be worrying about disposition in this case, and I mean it. I mean it." At the conclusion of the day, counsel were implored again to get the defendants to plead guilty.

Trial resumed the next day. The first inquiry by the court was whether counsel

---

1. D.C.Code 1973, § 23–104(c).

2. One subpoena was issued seeking production of tapes and records of a lineup at which a witness was unable to identify appellees. Other subpoenas sought the presence of the investigating officers.

had been able to persuade their clients to plead guilty. Immediately after both defense counsel responded to this inquiry, the judge admonished Abney's counsel to "act like a lawyer". During opening statements, the government objected to certain statements made by Abney's counsel. The trial judge in reprimanding counsel stated, "Wait a minute. I am not going to let this trial get out of hand."

Later during direct examination of the first witness, there was another occasion of friction between the court and the same counsel regarding a stipulation as to hospital records. The judge indicated that unless counsel acted like a lawyer he would be removed from the case. This confrontation climaxed with the following colloquy:

> THE COURT: [Counsel], you are coming awfully close. I keep warning you, sir, keep warning and it does not seem to get to you. Remember, a year ago, I told you this, sir?
>
> [COUNSEL]: I don't recall.
>
> THE COURT: I am surprised that you would not. If any judge had told me this, a year ago, I would not have forgotten for the rest of my life. Never. I have practiced law here since 1948 until November of '70, if any judge had ever said what I said to you, I would never have forgotten it.

Subsequent cross-examination by Abney's counsel resulted in nine instances where the government's objections were sustained or overruled. With each confrontation the participants appeared to become more antagonistic.

When trial resumed the next·day, the government indicated that earlier in the day Abney's counsel had been in contact with an absent witness, against whom an attachment had been issued. A hearing was requested in an attempt to discern whether Abney's counsel had advised the witness not to come to court. Testimony elicited at the hearing indicated that there had been no impropriety because counsel had in fact encouraged court appearance. Counsel for appellee Bristol commented that Abney's counsel had made attempts to secure the apppearance of the witness. Bristol's counsel then went on to say that he was close to asking for a mistrial for his client because he was fearful that the "vindictiveness that ha[d] gone on through counsel . . . [was] pouring off on the jury."

After a brief discussion on the impropriety issue, the prosecutor, in a colloquy with the judge, made an extensive statement urging the court to declare a mistrial in the case. The government, recognizing that it could not move for a mistrial, suggested that if the case went to a guilty verdict the government would be in the position of having to "confess error" on appeal. Further, it reviewed the factors which assertedly justified its position including, *inter alia*, the incidents before the previous judges, the "circus-like atmosphere" prevailing during cross-examination of witnesses, the judge's comments concerning his own personal fear that Abney was not receiving adequate representation, and the comment by co-counsel concerning mistrial.

In response, the trial court stated that it had previously considered declaring a mistrial because of the prejudicial atmosphere created. After a summary statement by Abney's counsel concerning his own view as to the conduct of the trial, the trial judge declared a mistrial. The judge stated:

> Well, for the reasons that have been expressed here and for my own personal reasons . . . this case should have been declared a mistrial yesterday. I do not feel that Mr. Abney was receiving an adequate representation, resulting in a fair trial for him and in turn, that prejudice may have [evolved] insofar as Mr. Bristol is concerned. I am going to declare this a mistrial and I will give consideration as to the removal of [Abney's counsel] and appointing a new counsel.

The record does not reveal the nature of the judge's personal reasons. Defense counsel objected and sought a continuation of the trial.

It is significant that the trial judge indicated it was his opinion that Abney was not "receiving an adequate representation, resulting in a fair trial". Yet at a subsequent proceeding when Abney's counsel was removed the court stated:

> I have given very, very serious thought to this matter and I have come to the conclusion that since there are codefendants in this case, I do have the feeling that I must remove [Abney's counsel] in this case because I do feel that any subsequent trial in this case would not result in a fair trial to either Mr. Bristol or to . . . Mr. Abney. I make this observation *without criticism to* [*Abney's counsel's*] *trial tactics or competency*, but in the sole interest in the administration of justice. [Emphasis supplied.]

The court further stated that it had considered sua sponte severing the cases but had decided against that course.

In granting appellees' motions to dismiss, another judge, after a hearing, reasoned that there was no manifest necessity to declare the mistrial and that a fair interpretation of the transcript would not support the conclusion that appellees were being denied a fair trial. We agree.

■ The Fifth Amendment provides, *inter alia,* that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb". As explained in Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957):

> The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense . . . .

It is now well recognized that jeopardy first attaches when, in a jury trial, the jury is sworn or when the first evidence is presented in a trial before a judge. *See* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Jeopardy had attached in the trial of these cases.

■ A subsequent prosecution under the same indictment and after declaration of a mistrial is barred when, under all circumstances, there was no manifest necessity for the discontinuance or the demands of public justice were not served. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).[3] That decision also teaches that those instances only arise under urgent circumstances. Accordingly, the decision to declare a mistrial is a matter calling for exercise of carefully balanced judgment. Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). *See also* Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). It is also an occasion to determine whether, for the reasons a discontinuance is considered an impartial verdict cannot be reached, or an error would require reversal on appeal. Illinois v. Somerville, *supra*, 410 U.S. at 464, 93 S.Ct. 1066.

■ Appellees argue that the conduct of the prosecutor amounted to bad faith with the objective of "triggering a mistrial in order to get another day in court." United States v. Jorn, 400 U.S. 470, 482, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971). We recognize that at the time the government made its statement to the judge its case had been severely undercut. Defense counsel had, through extensive cross-examination of two government witnesses, significantly neutralized the impact of their testimony. Also, the attempt to introduce what the government considered to be evidence of impropriety on defense counsel's part had

---

3. In United States v. Perez, *supra*, the trial judge discharged the jury which had become deadlocked during deliberations. The United States Supreme Court held that the double jeopardy clause did not bar retrial.

been sufficiently contravened as to indicate no impropriety but encouragement for the witness to appear to testify. We do not have occasion to evaluate the government's motives, for, without doing so, it is apparent that the trial judge made insufficient "effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial." United States v. Jorn, *supra* at 487, 91 S. Ct. at 558.

Somewhat of a mystery in this case is the exact reason for the trial judge's action. At the point when mistrial was declared, he stated that he did so because he felt that Abney was not receiving "an adequate representation, resulting in a fair trial for him and in turn, that prejudice may have [enured to] Mr. Bristol". Contrary to this expression, the judge, when he later removed counsel from the case, observed that he did so. "without criticism to [counsel's] trial tactics or competency, but in the sole interest in the administration of justice." He speculated that any subsequent trial would be rendered unfair if Abney's counsel remained in the case. Merely saying such words as "in the interest of the administration of justice" is not enough. Precise and justified reasons must be made to appear for a mistrial if a retrial is to be permitted.

The record in the instant case dispels any question of counsel's lack of preparation. Counsel indicated his grasp of the case during opening statements and cross-examination of witnesses. Indeed, his conduct at one point in the trial was described as "zealous".

It is apparent that from the very beginning of the trial and throughout the proceeding there developed between the judge and Abney's counsel a personal antagonism which had had its genesis in an incident occurring at least a year earlier. Building upon that apparent discord was the failure of counsel to persuade their clients to plead guilty, as urged by the trial judge. This was followed by an exasperating incident involving cross-examination and rancor arising from the refusal to stipulate as to hospital records—the court later agreeing that refusal was justified. It should be noted that contributing to the "circus-like atmosphere" of the trial was the conduct of the prosecutor for we note that several times the trial judge overruled the prosecutor's objections and that at one point the prosecutor was asked to sit down. Superimposed on the foregoing is a statement by the trial judge that his "personal reasons" played a part in declaring the mistrial.

We conclude that the trial judge's declaration of mistrial was not based upon a "scrupulous exercise of judicial discretion", United States v. Jorn, *supra* at 485, 91 S. Ct. 547, and cannot be justified on an accepted basis which permits a second trial.[4] Accordingly, the trial court's action granting appellees' motions to dismiss is

Affirmed.

---

4. From our reading of the transcript, we note that Abney's counsel bordered on being obnoxious at times and no doubt his tactics might have been viewed to be frustrating and indeed unprofessional during the entire proceedings. Other means of censure and discipline are available which do not affect the rights of a defendant to be able "once and for all, to conclude his confrontation with society . . . . " United States v. Jorn, *supra* at 486, 91 S.Ct. at 558.