THE STATE OF OHIO, APPELLEE, *v.* ALDRIDGE, APPELLANT.

(No. 43426—Decided December 10, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Hyman Friedman,* county public defender, for appellant.

DAY, P.J. This case is an appeal by defendant-appellant, Bryant Aldridge (defendant), from a denial of a defense motion to dismiss the case against him on grounds of double jeopardy following a previous judgment declaring a mistrial on the state's motion. The denial was a final appealable order, *State* v. *Thomas* (1980), 61 Ohio St. 2d 254, 258 [15 O.O.3d 262].

For the reasons adduced below the judgment below is reversed and the cause remanded.

I

Defendant-appellant, Bryant Aldridge (defendant), and James Poon were indicted on charges of breaking and entering (R.C. 2911.13), aggravated robbery (R.C. 2911.01), and carrying a concealed weapon (R.C. 2923.12). Defendant pleaded not guilty. Poon pleaded guilty to a lesser charge and was awaiting sentencing by the judge who presided at defendant's trial.

Poon, defendant, and a Mark Jones were accused of breaking into Scrooge & Marley's Restaurant on the near West Side of Cleveland around 2:30 a.m., August 14, 1980. Poon had been fired from his job at Scrooge & Marley's just before the alleged break-in.

Defendant went to trial November 19, 1980. On November 20, the trial judge declared a mistrial. On January 29, 1981, a hearing was held before a different judge[1] on defendant's motion to dismiss on grounds of double jeopardy. The defendant appeals the denial of his motion assigning one error:[2]

Assignment of Error

"The trial court erred and abused its discretion by refusing to dismiss the indictment against appellant and thereby subjecting him to reprosecution in violation of his Fifth and Fourteenth Amendment protection against double jeopardy."

II

The prosecution called Poon, the person indicted with defendant, as a witness at defendant's trial. The prosecutor had not interviewed Poon before he took the stand. From the prosecutor's direct examination of the witness it can be adduced that questioning was based on a statement Poon made to police shortly after his arrest. Poon's testimony, however, differed in some respects from his statement. For example, Poon testified that he and Jones entered the restaurant through an unlocked window about nine feet up on the west side of the building and he had no implement with him. But in his statement he said he used a screwdriver to pry open the window. Poon testified that only he and Jones entered the building and defendant stayed outside to serve as a lookout or "watchout." He testified that defendant did not go into the building at all although in his statement he said he "let Dale [defendant] inside the door * * *." (cf. Poon's statement to police: "I ran down the stairs to the back door and I [saw] Dale Aldridge inside the door way looking out, as a watch out [sic].")

Poon was arrested at the restaurant about half an hour after he and Mark

---

[1] Defendant filed an affidavit of prejudice against the original judge. The affidavit was withdrawn after the case was reassigned to a different trial judge "for good cause shown" (Judgment Entry, December 22, 1980).

[2] The second trial was stayed pending appeal.

Jones had entered the building. He had a .25 caliber automatic with one bullet in his back pocket. Defendant and Jones were arrested about twenty minutes later when they "come walking up there, talking to the policeman."

During cross-examination of Poon, defense counsel elicited that he had pleaded guilty to a lesser charge than that in the indictment because conviction of an offense committed with a gun is non-probationable. Defense counsel used the term "deal" in discussing Poon's plea bargain. During that colloquy between defense counsel and Poon[3] the prosecutor objected only once and that objection was overruled.

### III

After a recess during Poon's testimony defendant moved for a mistrial, contending that the prosecution was cross-examining its own witness and "the whole process by which the witness was examined through the use of [his] statement was improper." The trial court denied the defense motion for a mistrial.

The next day, November 20, the prosecutor moved for a mistrial. He argued that the jury had been tainted by the fact that:

"[T]he defendant's counsel, while cross-examining the co-defendant in this case, brought out the fact that when there

---

[3] "Q. Now, when you told us that you had plead guilty to the indictment, that's not entirely true, is it?

"A. Yes.

"Q. You were given what we call a deal, weren't you?

"A. No, I wasn't given a deal.

"Q. Well, the original charge was aggravated robbery with a gun, was it not?

"A. Yes.

"Q. And you knew that that would be non-probationable, wouldn't you?

"A. I wouldn't call it a deal, though.

"Q. Do you or do you not know that an offense committed with a gun is non-probationable?

"A. Mandatory time.

"Q. You cannot get probation?

"A. Yeah, it's mandatory time.

"Q. The gun was taken out for you?

"A. Right.

"Q. So you were given a deal?

"A. It's not promised.

"Q. The deal was the possibility of getting probation?

"[THE PROSECUTOR] Objection.

"A. Yes, but it's not promised.

"THE COURT: The objection is overruled, except that the Court will explain to the jury at this time, it is not a deal as such. It is known as plea bargaining, and the Court will explain that later. But it has nothing at all to do with any inducement to the defendant to make

any further statement, or give any further testimony.

"Q. If you had pled guilty to the offense with the gun, you would have gone straight to jail, wouldn't you?

"A. I presume so.

"* * *

"Q. And you are concerned that the authorities involved here go easy on you, aren't you?

"A. Yeah.

"Q. And in fact, that's why you say you made your statement — 'I figure since I made a statement it would be easy on me,' isn't that right?

"A. Right.

"Q. And that's why you are testifying here today, also. You figure it will be easier on you if you testify, isn't that right?

"A. Right.

"* * *

"Q. Okay. By the way, it is this judge who will sentence you, isn't it?

"A. Yes.

"Q. And you would like to appear nice in front of his eyes, would you not?

"A. Yes.

"Q. Now, he hasn't promised you anything, has he, for the record?

"A. No.

"Q. And because he hasn't promised you anything, you want to appear to be cooperating with the authorities, isn't that correct?

"A. Yes."

is a gun involved in any crime, that that gun, that case is non-probationable; and if a guilty verdict does come out, that the defendant must go to jail, that the Court has no recourse but to sentence him to jail."

Defense counsel countered that:

"[A]lmost everything that [the prosecutor] says is incorrect. It is our contention, your Honor, that the written statement given by James Poon to the police on August 14th, 1980, is a lie insofar as it involves Bryant Aldridge in this offense.

"In attempting to show that to the jury by way of cross-examination, it was my purpose, and it will continue to be my purpose if this trial continues, to get at Poon's motivation for testifying the way he is in front of the jury, in a manner somewhat consistent with what he said to the police on August 14th, even though there are some rather glaring inconsistencies."

The court granted the state's motion for a mistrial with a caveat to the defense counsel:

"If counsel for defendant is participating in that [second] trial, I would say now, in the event I neglect to say it at the opening of that next trial, that the defense counsel must avoid questions of and answers and information being presented to the jury with regard to the 'deals' with regard to punishment which is not for consideration of the jury at all, and that's elementary basic trial law in criminal matters, and must avoid improper presentation to the jury. I suppose I could have predicted this might have come to this when the voir dire began to get out of hand yesterday morning with constant repetition about people lying under oath. That got to be the point where you are conditioning the jury to disbelieve anybody who is under oath."

In a judgment entry journalized December 3, 1980,[4] the trial judge stated:

"On the Motion of the Prosecutor and Defense Counsel and for good cause shown the Court declares a Mistrial."

In a subsequent judgment entry journalized December 19, 1980[5] (ten days after the case was journalized for reassignment) the original trial judge stated:

"Corrected Journal Entry NUNC PRO TUNC as of November 20, 1980. On consideration of the Motion of the Prosecutor for mistrial, the Court, on its own motion, also reconsiders it [sic] order overruling [sic] Defense Motion for Mistrial and for good cause shown to the satisfaction of the Court, orders a mistrial in this case."[6]

## IV

"[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial," *Arizona* v. *Washington* (1978), 434 U.S. 497, 505.

This generalization reflects the constitutional prohibition against double jeopardy.[7] But the bar is not absolute.[8] In determining whether a second trial is prohibited after mistrial there are two questions to be answered.

First, had jeopardy attached?

Second, if jeopardy had attached, is a re-trial barred by the Constitution or does the case fall within an exception?

Jeopardy attached in this case when

---

[4] Judgment entry was dated November 20. The judgment entry transferring the case for reassignment was dated December 3 and journalized December 9, 1980.

[5] Dated December 10, 1980.

[6] Defendant also moved to correct the journal entries to conform to the record which was also argued and denied at the January 29, 1981, hearing before the new trial judge.

[7] Amendments V and XIV to the United States Constitution. *Benton* v. *Maryland* (1969), 395 U.S. 784, 794.

[8] Cf. *United States* v. *Jorn* (1971), 400 U.S. 470, 480.

the jury was sworn, cf. *Crist* v. *Bretz* (1978), 437 U.S. 28, 37-38. But this is only the beginning of the inquiry. For:

"[I]n cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois* v. *Somerville* (1973), 410 U.S. 458, 467.

An exception to the bar is created when, on a government motion or, *sua sponte,* the court grants a mistrial because of "manifest necessity" or to prevent defeat of "the ends of public justice."[9] However, the "manifest necessity" or "ends of public justice" ("good cause shown")[10] question is given a special contour by the facts in the present case. The question here is — may a judge who grants a state motion for mistrial without the "good cause" claimed, prevent the double jeopardy consequences thus incurred by reconsidering, *sua sponte,* and granting a groundless, previously denied defense motion for mistrial? In other words can the ill consequences of one mistake be neutralized by reconsidering and making another?

The United States Supreme Court has held, that when the prosecution "depended almost entirely on * * * [a co-conspirator's] testimony" and the witness' "credibility * * * was * * * an important issue in the case," such "evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it," *Giglio* v. *United States* (1972), 405 U.S. 150, 154-155.

"[T]he spectre of bias materializes anytime the evidence indicates that the witness has potential trading assets to barter with the State," *State* v. *Gavin* (1977), 51 Ohio App. 2d 49, 53 [5 O.O.3d 168]. A denial or limitation of cross-examination of a state witness with respect to what he hopes to gain from a plea, whether in the same or an unrelated matter, may block the legitimate exposure of "a potent biasing factor." This consequence affects a substantial right of the defendant, *id.* at 55.

The record shows that the trial court granted the state's motion for a mistrial because it felt that defense questions addressing witness Poon's motives for being a prosecutor witness "taint[ed]" the jury and that in addressing questions to Poon's plea bargain defense counsel went "beyond the boundaries of trial propriety" and presented "an unconscionable effort that cries out for action by the Court."[11]

Defendant's counsel was entitled to vigorously cross-examine the state's key witness on his pleas and the effect of it. This, counsel did. It was his duty to do so in order to expose any bias to the jury and to give the defendant the best possible representation. Thus, it appears that the mistrial on the state's motion over objection was done because of a misapprehension of the scope of the defendant's right to cross-examine. This effectively nullifies any claim that the state's motion was for "good cause shown." Moreover, there could be no "manifest necessity" or legitimate defense of the "ends of public justice" served by granting the state a mistrial to protect it from a legitimate attack on the credibility of its witness. The state had no right to such protection.

Defendant's motion for a mistrial was denied. The court gave no reasons on the

---

[9] *United States* v. *Perez* (1824), 9 Wheat. (22 U.S.) 579, 580; *Illinois* v. *Somerville, supra,* at 461.

[10] Cf. *Nunc Pro Tunc* journal entry of the trial court in this case quoted under III above.

[11] Before the witness was submitted to cross the state went into the plea "to the indictment" and coercion threats or promises to get it.

record.[12] Defendant made no effort to renew his motion. The first judge's two journal entries do not indicate any reason for "its own motion" to reconsider nor does he explain any "good cause shown." In other words, the reason for the trial judge's action is "[s]omewhat of a mystery in this case * * *. Merely saying such words as 'in the interest of the administration of justice' [or "for good cause shown"] is not enough. Precise and justified reasons must be made to appear for a mistrial if a retrial is permitted," *United States* v. *Bristol* (D.C. App. 1974), 325 A. 2d 183, 187.

No such precise and justified reasons appear.[13]

Thus, it appears that the trial court's action was defensible when it originally denied the defense motion for a mistrial but indefensible when it granted the state's motion. The legal impropriety was compounded when, upon sua sponte reconsideration, the court revived and granted the original defense motion.

The assignment of error is well taken.

The defendant cannot be put again in jeopardy.

The cause is remanded to the court of common pleas with instructions to discharge the defendant.

*Judgment reversed*
*and cause remanded.*

CORRIGAN and CELEBREZZE, JJ., concur.

---

[12] The defense reasons (1) state misuse of a pre-trial statement in the direct examination of a witness and (2) state impugnment of defense counsel's truthfulness in the jury's presence were, if well grounded, reprehensible but hardly ineluctable grounds for mistrial.

[13] Indeed, the reconsideration and granting of the defendant's motion long after the first denial could be considered a bolstering effort apparently resulting from an afterthought. This conclusion becomes even more compelling when the second post-dismissal entry in this case (*nunc pro tunc*) is taken into account. The use of *nunc pro tunc* authority to correct errors of judgment is impermissible, *Torres* v. *Sears, Roebuck & Co.* (1980), 68 Ohio App. 2d 87, 89-90 [23 O.O.3d 128].