JOURNAL ENTRY AND OPINION
Sheri Rigor separately appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding her guilty of one count of possession of twenty-six grams of crack cocaine and one count of possession of criminal tools, to wit: a pager and her 1992 Jeep Cherokee. Rigor urges on appeal that the court abused its discretion by denying her cross-examination of a witness and by imposing a fifteen thousand dollar fine. She also claims that her convictions are not supported by sufficient evidence and that the jury verdicts are against the manifest weight of the evidence. After careful review, we reject these contentions and affirm the judgment of the trial court.
The record reveals that around two o'clock on the morning of May 14, 1997, Cleveland Police Officers David Wilsman and Matthew Baeppler observed a 1992 red Jeep Cherokee operated by Robert Annotico run a stop sign at the corner of East 64th Street and Beaver Street in Cleveland, Ohio. They stopped the Jeep, and as they approached the vehicle, they noticed that Sheri Rigor, the back-seat passenger, made a furtive movement as if placing something in her pants. Officer Wilsman became concerned that Rigor had a weapon, so he called for assistance to come to the scene. Officer Terrence Potts arrived, removed Rigor from the Jeep, and ordered the other occupants, Annotico and Ronald James Loftis, out of the vehicle. While waiting for a female officer to arrive to conduct a search of Rigor's person to determine what she had stuffed in her pants, Rigor voluntarily removed a bag of crack cocaine from her pants. Officer Potts confiscated the drugs and arrested her, along with Annotico and Loftis.
Officer Wilsman then conducted an inventory search of the vehicle and discovered pagers, a crack pipe under the driver's seat, a broken crack pipe under the back seat, and a bag of crack cocaine in the glove box. He also attributed a statement to Rigor regarding her possession of the crack to the effect that, he gave it to me.
The grand jury subsequently indicted Rigor, Annotico, and Loftis for one count of possession of crack cocaine in excess of twenty-five grams but less than one hundred grams in violation of R.C. 2925.11, a first degree felony, and one count of possession of criminal tools, to wit, pagers, money, and a 1992 Jeep Cherokee, in violation of R.C. 2923.24, a fifth degree felony. Loftis then pled guilty to a third degree felony with a stipulation that he would receive a minimum sentence in exchange for his testimony against Rigor and Annotico.
The court tried Annotico and Rigor together. Loftis testified, denying ownership of the drugs. He testified that when Rigor and Annotico picked him up, they had the crack cocaine with them. During cross-examination, Loftis admitted that the state permitted him to plead guilty to a third degree felony instead of a first degree felony as charged in the indictment and that he agreed to testify against Loftis and Rigor. The court, however, sustained objections to questions posed to Loftis about the maximum penalty for a first degree felony, the charge for which he had been indicted.
The state also called Cynthia Dakota, a Scientific Examiner, who testified that the substance Officer Potts confiscated from Rigor tested positive for cocaine.
Finally, Officer Baeppler corroborated that Rigor made a sudden movement as the police approached the car; that the pager taken from Rigor had been going off during the arrest; and he confirmed Rigor's ownership of the Jeep. At the close of the state's case, Rigor's attorney moved for acquittal pursuant to Crim.R. 29, but the court denied that motion.
Rigor testified in her own defense. She stated that she and Annotico, her boyfriend, met Loftis in a bar on Dennison Avenue and the three decided to go to Loftis' house. When Loftis spotted the police, he threw the bag of crack cocaine he had into her lap and yelled at her to hide it in her privates. Further, she admitted ownership of the Jeep and explained that Loftis had given her the crack cocaine; she also testified that she gave it to the police, but she denied that either the crack cocaine or the crack pipes found in her vehicle belonged to her. At the close of her case, she moved for acquittal, but the court denied her motion.
Thereafter, the jury returned guilty verdicts against her on both counts. The court then imposed a fifty year prison term on counts one and two to run concurrently and a fifteen thousand dollar fine. Two days later the court entered a subsequent journal entry, which sentenced Rigor to concurrent terms of five years each on counts one and two and again, imposed the fifteen thousand dollar fine. However, twenty days later, the court journalized a third entry imposing concurrent sentences of five years on count one, and one year on count two but omitting the fifteen thousand dollar fine.
Rigor now appeals and raises five assignments of error for our review. The first assignment of error states:
 I. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING CROSS-EXAMINATION OF THE CO-DEFENDANT CONCERNING HIS PLEA BARGAIN IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
Rigor urges that the court abused its discretion by not permitting her defense counsel to fully cross-examine Loftis, thereby denying the jury an opportunity to assess his bias and credibility. The state asserts the court did permit cross-examination concerning Loftis' plea agreement, and only restricted questioning as to potential penalties for a first degree felony conviction. Thus, the issue here concerns whether the court properly limited cross-examination in this instance.
Evid.R. 611(B) states:
 Cross-examination shall be permitted on all relevant matters and matters affecting credibility.
Evid.R. 611 must be balanced with Evid.R. 403(B) which states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
In State v. Lundgren (1995), 73 Ohio St.3d 474, the court stated:
 * * * Lundgren argues the trial court unfairly restricted the cross-examination of his accomplices concerning the full benefits of their plea arrangements. In fact, the trial court allowed cross-examination * * * regarding their plea agreements, including questions about the offenses originally charged, the offenses to which each witness pled guilty, the conditions of the plea arrangements, and the maximum sentences to be recommended under the plea bargains. The trial court, however, did not allow counsel to * * * cross-examine the accomplices on speculative issues such as their possible probation or parole.
 "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge." * * * Here, we determine that no abuse of discretion occurred, since Lundgren had a full opportunity to demonstrate the bias or prejudice of each of these accomplices. * * *. (Citations omitted.)
In this case, the record reveals that on cross-examination Rigor's attorney asked Loftis the following:
 Q. Now, you were indicted on a felony one, remember, on this case?
A. Yes.
 Q. Okay. And that carries what, three to ten years, your lawyer told you?
MS. HILOW: Objection.
 THE COURT: Sustained. He's not here to interpret the law.
Q. Do you know what the penalty is for a felony one?
MS. HILOW: Objection.
THE COURT: Sustained.
The court also permitted Loftis to testify about the degree of his involvement in the incident. Defense counsel, however, never specifically inquired as to motives for Loftis' plea. From his testimony, however, the jury knew that Loftis obtained a benefit by pleading to a lesser degree felony.
In State v. Aldridge (1981), 3 Ohio App.3d 74, our court considered a similar issue and stated:
 Defendant's counsel was entitled to vigorously cross-examine the state's key witness on his pleas and the effect of it. This, counsel did. It was his duty to do so in order to expose any bias to the jury and give the defendant the best possible representation.[1]
In this case, the record shows that defense counsel ask Loftis about the degree of felony involved in his plea and about Loftis what his counsel had told him regarding penalty and whether he knew the penalty for a first degree felony; counsel, however, never pursued other aspects of the plea agreement.
Here, in denying the jury information about penalty, the court did not abuse its discretion because the record does not reveal that Loftis had personal knowledge of the penalties, nor is he qualified to testify about criminal penalties. Further, the form of the question posed to him is improper in that it allows for him to repeat what his lawyer told him. Notably, defense counsel did not pursue other avenues to highlight for the jury the nature of the plea agreement. Finally, in accordance with Ohio Jury Instructions, the subject of punishment is not a proper jury consideration. Accordingly, this assignment of error is overruled.
 II. THE COURT'S IMPOSITION OF FINANCIAL SANCTIONS MUST BE VACATED BECAUSE THE TRIAL COURT FAILED TO CONSIDER THE APPELLANT'S PRESENT AND FUTURE ABILITY TO PAY THE SANCTION UNDER R.C. 2929.19(B)(6).
Rigor argues the court imposed an excessive fine, failed to comply with R.C. 2929.19(B)(6), and urges us to vacate it. The state maintains the court properly imposed the fine in this instance because Rigor failed to file an affidavit of indigency prior to sentencing. The issue here then concerns whether the court properly imposed a fifteen thousand dollar fine.
R.C. 2929.18(B)(1) states in part:
 For a first * * * degree felony * * * of Chapter 2925 * * *, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense * * *. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender. (Emphasis added.)
Further, in State v. Frazier (October 9, 1997), Cuyahoga App. No. 71675-78, unreported, we stated:
 It is clear that the court should consider the impact a fine has on the offender, however, the court is required to consider such factors only if evidence is offered at the sentencing hearing. * * * Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal. (Citations omitted.)
The record here reveals that Rigor failed to file an affidavit of indigency prior to sentencing, as required by R.C. 2929.18(B)(1) or that, at the time of sentencing, she objected to the amount or demonstrated that she lacked the resources to pay the fine. Thus, in accordance with Frazier, Rigor waived any objection to the fine on appeal. For these reasons, we reject this assignment of error.
 III. THE RECORD DOES NOT SUPPORT THE IMPOSITION OF MORE THAN THE MINIMUM SENTENCE FOR A FIRST OFFENDER IN VIOLATION OF OHIO LAW.
Rigor urges that the court failed to make the requisite findings pursuant to R.C. 2929.14(B)(1) to impose more than the minimum sentence. The state, however, maintains that the court made the necessary findings and correctly determined that a minimum sentence would demean the seriousness of these crimes. The issue here concerns whether the court properly supported a five-year term of imprisonment.
We begin by noting R.C. 2929.14(B) states in part:
 * * * [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * *, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
Further, in State v. Edmonson (1999), 86 Ohio St.3d 324, the court, referring to R.C. 2929.14(B), stated:
 We construe this statute to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
 R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose mor than the minimum authorized sentence. * * *. (Emphasis in the original.)
The record before us reveals that the court stated the following at Rigor's sentencing:
 * * * Sheri, it would demean the seriousness of the offense for me to give you a minimum penalty.
Thus, we have concluded that the court complied with the dictates of the statute and Edmonson. Therefore, this assignment of error is overruled.
 IV.
THE EVIDENCE IS INSUFFICIENT TO CONVICT THE APPELLANT.
 V.
THE VERDICTS ARE AGAINST THE WEIGHT OF THE EVIDENCE.
Here, Rigor argues that her convictions are not supported by sufficient evidence and that they are against the manifest weight of the evidence, urging that the state failed to prove beyond a reasonable doubt that she voluntarily possessed crack cocaine or any criminal tools. The state maintains that the evidence proved beyond a reasonable doubt that Rigor possessed crack cocaine and criminal tools on May 14, 1997.
The issues then presented for review concern whether Rigor's convictions are supported by sufficient evidence and whether they are against the manifest weight of the evidence.
The test for sufficiency is enumerated in Crim.R. 29(A), which states in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.* * *.
The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court stated:
 * * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. (Citations omitted.)
In this case, two indictments had been returned against Rigor. The first alleges Rigor violated R.C. 2925.11, knowingly possessing a controlled substance, to wit: crack cocaine, a Schedule II drug, in an amount greater than twenty-five grams but not exceeding one hundred grams.
The second alleges a violation of R.C. 2923.24 and states that Rigor possessed or had under her control a substance, device, instrument, or article, with purpose to use it criminally, to wit: pagers and a 1992 Jeep.
Regarding the evidence produced by the state in its case-in-chief for possession of crack cocaine, the record reveals Officer Potts testified that, at the time of her arrest, Rigor reached into her pants, removed a bag of crack cocaine, and voluntarily gave it to him.
Regarding possession of criminal tools, the evidence offered by the state reveals Officer Wilsman testified that he found pagers in the Jeep during his inventory search. Further, Officer Baeppler testified that he removed a pager from Rigor's person that had been going off, and he ran the license plates for the Jeep and learned that Rigor owned that vehicle.
Considering this state of the record, we have concluded that the trial court properly denied Rigor's motion for acquittal because the evidence presented permitted the trier of fact to find all of the essential elements of both crimes.
Only after the court resolves the question concerning the sufficiency of the evidence, can it proceed to question whether the judgment is against the manifest weight of the evidence. This involves a different test. In Martin, the court stated:
 * * * [W]e next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *. (Citations omitted.)
To properly consider this claim, we review the evidence offered by the defense to determine whether the convictions are against the manifest weight of the evidence. In this case, Rigor testified that although she had possession of the bag of crack cocaine, it belonged to Loftis. Further, she admitted that she owned the Jeep. After a review of the entire record, we are not persuaded that the trier of fact lost its way and created a manifest miscarriage of justice when it found her guilty of possession of crack cocaine and criminal tools. Accordingly, these assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, J., CONCURS; ANNE L. KILBANE, J., DISSENTING IN PART AND CONCURRING IN PART (See Dissenting and Concurring Opinion attached)
[1] "Q. Now, when you told us that you had plead guilty to the indictment, that's not entirely true, is it?
"A. Yes.
"Q. You were given what we call a deal, weren't you?
"A. No, I wasn't given a deal.
"Q. Well, the original charge was aggravated robbery with a gun, was it not?
"A. Yes.
"Q. And you knew that that would be non-probationable, wouldn't you?
"A. I wouldn't call it a deal, though.
"Q. Do you or do you not know that an offense committed with a gun is non-probationable?
"A. Mandatory time.
"Q. You cannot get probation?
"A. Yeah, it's mandatory time.
"Q. The gun was taken out for you?
"A. Right.
"Q. So you were given a deal?
"A. It's not promised.
"Q. The deal was the possibility of getting probation?
"[THE PROSECUTOR] Objection.
"A. Yes, but it's not promised.
"THE COURT: The objection is overruled, except that the Court will explain to the jury at this time, it is not a deal as such. It is known as plea bargaining, and the Court will explain that later. But it has nothing at all to do with any inducement to the defendant to make any further statement, or give any further testimony.
"Q. If you had pled guilty to the offense with the gun, you would have gone straight to jail, wouldn't you?
"A. I presume so.
"* * *
"Q. And you are concerned that the authorities involved here go easy on you, aren't you?
"A. Yeah.
"Q. And in fact, that's why you say you made your statement — `I figure since I made a statement it would be easy on me,' isn't that right?
"A. Right.
"Q. And that's why you are testifying here today, also. You figure it will be easier on you if you testify, isn't that right?
"A. Right.
"* * *
"Q. Okay. By the way, it is this judge who will sentence you, isn't it?
"A. Yes.
"Q. And you would like to appear nice in front of his eyes, would you not?
"A. Yes.
"Q. Now, he hasn't promised you anything, has he, for the record?
"A. No.
"Q. And because he hasn't promised you anything, you want to appear to be cooperating with the authorities, isn't that correct?
"A. Yes."