JOURNAL ENTRY AND OPINION
Jose Vera appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of the felonious assault of Jose Rodriguez. On appeal, Vera complains that the court did not allow him to fully cross-examine a co-defendant about his plea bargain; that it failed to instruct the jury on the lesser offenses of felonious assault and reckless assault; and that it improperly instructed the jury on "defense of another." After careful review, we reject these contentions and affirm the judgment of the court.
The record reveals that Jose Hernandez, Vera's co-defendant, had a dispute with Jose Rodriguez's brother. On October 26, 1999, Vera and Hernandez saw Rodriguez driving in a car. They unsuccessfully tried to pull him over but followed him to his house on W. 52nd Street. Rodriguez exited the car and went inside to get his brother, who was not at home. When he came out of the house, he saw Hernandez in a fighting stance; Rodriguez then punched Hernandez in the jaw, knocking him to his knees. At that point, Vera picked up a shovel and hit Rodriguez in the back of the head with it. Rodriguez's uncle, Hector Cora, happened to be walking to the house as the altercation took place and witnessed the incident; he called the police and had Hernandez taken to the emergency room. Because of the seriousness of his injuries, Rodriguez was hospitalized for a month.
The grand jury indicted both Vera and Hernandez on charges of felonious assault and attempted murder; mid-way through trial, however, Hernandez pled guilty to a misdemeanor assault charge in exchange for providing information to the prosecutor about the incident.
At trial, Rodriguez testified that after he hit Hernandez in the jaw, he turned around and saw a big flash; that he next remembered waking up in the hospital about two weeks later; and that, because of his severe head injuries, he underwent extensive rehabilitation to re-learn how to walk and eat.
Hector Cora, Rodriguez's uncle, testified that he stopped at the house on West 52 Street on October 26, 1999; as he walked toward the house, he saw a man, identified by him in court as Vera, pick up his shovel and strike another man, who turned out to be his nephew. He testified that as he approached, one of the two men said, "His uncle's coming," and jumped into the car and left.
Hernandez testified that after Rodriguez hit him in the jaw, he stumbled back to his car in a dazed and confused state and left the area with Vera. On direct, Hernandez testified that he pled guilty to misdemeanor assault in exchanging for information regarding the incident. During cross-examination, defense counsel also inquired about his guilty plea; when counsel purported to ask Hernandez about the sentences he would have faced under the attempted murder and felonious assault charges, the court sustained the state's objection.
Following trial, the jury returned its verdict finding Vera guilty of felonious assault, and the court subsequently sentenced him to a two-year prison term.
Vera now appeals and raises four assignments of error. The first states:
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING CROSS-EXAMINATION OF THE CO-DEFENDANT CONCERNING HIS PLEA BARGAIN IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
Vera claims that the court deprived him of the opportunity to fully cross-examine his co-defendant Hernandez as to the amount of prison time he faced under the charges of attempted murder and felonious assault and, thus, prevented the jury from understanding the benefits Hernandez received as a result of his plea bargain. The state counters that the court correctly sustained its objection because defense counsel asked improper questions.
Evid.R. 611(B) states:
 Cross-examination shall be permitted on all relevant matters and matters affecting credibility.
A defendant's counsel is entitled to vigorously cross-examine the state's key witness on his plea and the effect of it; it is counsel's duty to do so in order to expose any bias to the jury. State v. Aldridge
(1981), 3 Ohio App.3d 74, 443 N.E.2d 1026.
In State v. Lundgren (1995), 73 Ohio St.3d 474, 653 N.E.2d 304, the court elaborated on this issue in the following analysis:
 * * * Lundgren argues the trial court unfairly restricted the cross-examination of his accomplices concerning the full benefits of their plea arrangements. In fact, the trial court allowed cross-examination * * * regarding their plea agreements, including questions about the offenses originally charged, the offenses to which each witness pled guilty, the conditions of the plea arrangements, and the maximum sentences to be recommended under the plea bargains. The trial court, however, did not allow counsel to * * * cross-examine the accomplices on speculative issues such as their possible probation or parole.
 "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge." * * * Here, we determine that no abuse of discretion occurred, since Lundgren had a full opportunity to demonstrate the bias or prejudice of each of these accomplices. * * *. (Citations omitted.)
The record before us, at Tr. 572, reveals that on direct examination, the prosecutor attempted to lay before the jury the nature of the plea bargain, but defense counsel objected:
Q. [MR. MACK]:
 I allowed you to plead to misdemeanor assault, right?
A. [DEFENDANT]:
Yes, sir.
 Q. And I told you you could plead to a misdemeanor assault in exchange for what?
MR. MANCINO: Objection.
THE COURT: Overruled.
 A. For hearing my statement, whatever I had to say.
 Q. Okay. Because I wanted more information concerning the incident?
A. Yes. Yes, sir.
 Q. Okay. Why did you plead to a misdemeanor assault?
A. Because —
MR. MANCINO: Objection.
THE COURT: Overruled.
 A. `cause I want, you know, it was — I want to get my life together and I don't want to have to keep going through this. Like, I feel like I'm really the victim, you know, because I went to — I done went through a lot of problem with this, you know. My daughter had to see me like this. It was just a lot of things around this time I just, like I told my lawyer, I just want to get this over with and I want to go on with my life.
 Q. Okay. Did you plead and take responsibility to the crime of misdemeanor assault because you were responsible for the injuries to Jose Rodriguez?
MR. MANCINO: Objection.
THE COURT: Overruled.
 Q. Did you do it because you were the one who caused the injuries to Jose Rodriguez?
 A. Naw. Because I felt — I felt like — I felt like I shouldn't have never — when he called me to his house I should have just left it alone right there and then, that's what I feel.
 Q. Okay. It is your testimony that you didn't strike Jose Rodriguez?
A. Yes, sir.
(Tr. 572-574.)
Thereafter, on cross-examination, the court permitted defense counsel wide latitude to explore the nature of the plea bargain but sustained objections to two questions regarding penalties faced on the original charges of attempted murder and felonious assault:
Q. [MR. MANCINO]:
 Didn't the judge ask you when you were pleading guilty if you understood what you were pleading guilty to?
A. [DEFENDANT]:
Yes, he did.
 Q. Who were you pleading guilty to assaulting, that's what I'm trying to find out?
 A. Because my lawyer told me that's the best thing —
 Q. I don't care what your lawyer said. Who was it you supposedly assaulted that you're pleading guilty to?
A. I didn't assault nobody.
 Q. So you pled guilty to assaulting nobody; is that what you're telling us?
A. Yes.
Q. And your lawyer told you told (sic) that?
A. Yes.
 Q. It's not in connection with this case then, it's in connection with assaulting somebody in another case?
 A. No. As a matter of fact it's in this case right here.
 Q. Well, in this case you face ten years on the attempted murder, right?
MR. MACK: Objection, your Honor.
THE COURT: Sustained.
 Q. How much time do you have on the felonious assault?
MR. MACK: Continuing objection.
THE COURT: Gentlemen, come to the side?
 (Thereupon, a discussion was had between court and counsel off the record.)
MR. MACK: Is that sustained, judge?
THE COURT: I'm sorry.
MR. MACK: Is that objection sustained?
THE COURT: It was sustained.
MR. MACK: Thank you.
 Q. So, Mr. Hernandez, your testimony, you pled guilty to assaulting somebody you do not know, was never named; is that what you're saying?
 A. Because I was in an altercation, you know what I'm saying, I was in the wrong place at the wrong time.
 Q. But did your lawyer tell you when you were going to plead guilty to the assault charge you were pleading guilty to assaulting Jose Rodriguez?
A. No.
Q. No?
A. I mean —
 Q. Well, who do you think you were pleading guilty to assaulting?
 A. The reason because I was in the altercation so that would make me — I was there so, you know, that's why — that's why.
Q. Who did you have the altercation with?
A. The dude that hit me.
Q. Who is this dude?
A. Jose Rodriguez.
 Q. All right. Is that who you pled guilty of assaulting?
A. Yes, sir.
 Q. Okay. Did you get sentenced by the judge today?
A. Did I get sentenced by the judge?
Q. Yeah.
 A. They gave me — they carry — they gave me a felony — a felony misdemeanor one, simple assault, they gave me six months. They suspended the six months and gave me six months probation.
 Q. You got six months probation; is that what you're saying?
A. Yes. Yes.
 Q. And that's to get you to come here and testify in Court; is that right?
A. Yes, sir.
 Q. You've been down here all week, haven't you, pretty much.
A. Basically.
(Tr. 579-582.)
Upon review, the record shows that defense counsel fully explored the nature of the plea and its consequences. The court did not abuse its discretion in sustaining objections about the penalties for attempted murder and felonious assault because the record does not demonstrate that Vera had accurate knowledge of those penalties or that he was qualified to testify as to criminal penalties; furthermore, the subject of punishment is not a proper jury consideration. State v. Rigor (Dec. 14, 2000), Cuyahoga App. No. 76201, unreported. Suffice to say the record adequately demonstrates defense counsel's skill in laying before the jury the fact that Hernandez received a sentence of six months probation instead of being tried on charges of attempted murder and felonious assault. This enabled the jury to understand the nature of the plea bargain entered into between Hernandez and the state. This assignment of error, therefore, is not well taken.
We address Vera's second and third assignments of error together as they concern related issues of law.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY ON AGGRAVATED ASSAULT IN VIOLATION OF THE FOURTEENTH AMENDMENT.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY ON THE CHARGE OF ASSAULT IN VIOLATION OF THE FOURTEENTH AMENDMENT.
Vera contends that the court erred when it denied his request for instructions on aggravated assault and reckless assault. The state maintains that the court correctly denied his requests because the evidence does not warrant the instruction of these lesser included offenses.
In State v. Kidder (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, the court explained when a lesser included offense should be charged, stating in its syllabus:
 A criminal defendant is entitled to a lesser-included-offense instruction, however, only where the evidence warrants it. (Citations omitted.) Thus, the trial court's task is two[-]fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. (Emphasis added.)
In State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus, the court defined a lesser included offense:
 3. An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (State v. Kidder [1987], 32 Ohio St.3d 279, 513 N.E.2d 311, modified.)
Felonious assault, the crime with which the state charged Vera, is defined in R.C. 2903.11 as the following:
(A) No person shall knowingly:
(1) Cause serious physical harm to another * * *.
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Vera first contends that the court should have instructed the jury on aggravated assault. This offense is defined in R.C. 2903.12 as the following:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 (1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The court in Deem considered when a charge on aggravated assault is warranted for a defendant charged with felonious assault. It stated in its syllabus:
 4. Aggravated assault, R.C. 2903.12, contains elements which are identical to the elements defining felonious assault, R.C. 2903.11, except for the additional mitigating element of serious provocation. Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. (R.C. 2945.74 and Crim.R. 31[C], construed and applied.)
 5. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. (Citation omitted.) (Emphasis added.)
Here, despite Vera's assertion, the record does not contain evidence of serious provocation reasonably sufficient to incite Vera into using deadly force; because of this failure, we conclude that the court did not err in refusing to charge the jury on aggravated assault in this case. This assignment of error is, therefore, not well taken.
Regarding Vera's position that the court erred in failing to instruct the jury on reckless assault, R.C. 2903.13(B) defines this offense as follows:
 (B) No person shall recklessly cause serious physical harm to another * * *.
Moreover, the mental states of "knowingly" and "recklessly" are defined in R.C. 2901.22 as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. * * *
 (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result * * *.
We recognize that reckless assault, as defined by R.C. 2903.13(B), is a lesser included offense of felonious assault. See, also, State v. Conroy
(Sept. 24, 1998), Cuyahoga App. No. 72987, unreported. Thus, a charge on this offense should be given if "the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." Kidder, supra; see, also, State v. Thomas (1988),40 Ohio St.3d 213, 533 N.E.2d 286 (a charge on a lesser included offense is required only where the evidence would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense).
Here, the evidence adduced at trial in this case reveals that Vera acted with an awareness demonstrating he knew injury would result by striking Rodriguez with the shovel. Thus, the trial court had no duty on these facts to charge on reckless assault, because a jury could not reasonably conclude that the evidence supported a conviction of reckless assault but not of felonious assault. Accordingly, this assignment of error is not well taken.
The fourth assignment of error states:
 THE TRIAL COURT IMPROPERLY DEFINED DEFENSE OF ANOTHER TO THE PREJUDICE OF THE APPELLANT IN VIOLATION OF THE FOURTEENTH AMENDMENT.
Vera challenges the following jury instruction on defense of another:
 * * * The defendant had no greater rights than Jose Hernandez and was justified in using force not likely to cause death or great bodily harm only if Jose Hernandez was not at fault creating the situation giving rise to the assault on himself and the defendant had a reasonable ground and an honest belief that Jose Hernandez was in imminent danger of bodily harm and the only means of protecting him was by the use of force not likely to cause death or great bodily harm. (Emphasis added.)
He specifically contends that the court should not have included the language "not likely to cause death or great bodily harm" in its instruction. The state asserts that the jury instruction comports with the law in Ohio on the defense of another.
The affirmative defense of defense of another is available to one who uses appropriate force when coming to the aid of another if the other person was privileged to use such force. See State v. Wenger (1979),58 Ohio St.2d 336, 390 N.E.2d 801.
Furthermore, in State v. Williford (1990), 49 Ohio St.3d 247,551 N.E.2d 1279, the Ohio Supreme Court explained that a defendant claiming self-defense is privileged to use that force which is reasonably necessary to repel the attack.
Moreover, in order for the use of deadly force to be justified as self-defense, a real or perceived threat of death or great bodily harm is required. State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755.
Here, the evidence shows that Rodriguez punched Hernandez, which precipitated Vera's shovel attack on Rodriguez. The record does not contain evidence of real or perceived threat of death or great bodily harm to Hernandez justifying Vera's use of deadly force. Under the law, Vera is allowed to use only such force as is reasonably necessary, and no more, to repel Rodriguez's attack, which had consisted of a punch in the jaw. Given this state of the evidence and the law, the court's instruction that Vera was entitled to protect Hernandez with the use of force not likely to cause death or great bodily harm is a correct statement of law. Accordingly, this assignment of error is overruled, and the judgment of the court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. CONCURS DIANE KARPINSKI, J. CONCURS (See separate Opinion)