On this appeal from a jury verdict resulting from a trial before Judge Bridget M. McCafferty, I respectfully dissent on assignments of error one, two, and three, and concur in judgment only with respect to assignments of error four and five. Furthermore, even if Rigor had been validly convicted, the sentencing proceedings were so deficient and marred with irregularity that this court should at the very least remand for resentencing.[1]
As noted by the majority, Rigor and her co-defendant, Robert Annotico, were arrested after a traffic stop uncovered some 26 grams of crack cocaine. A joint indictment charged Rigor, Annotico, and a third defendant, Ronald Loftis, with possession of drugs, R.C. 2925.11, and possession of criminal tools, R.C. 2923.24. The possession count charged that the defendants possessed more than twenty-five grams but less than one hundred grams of crack cocaine, and the single count of possession of criminal tools charged that the defendants possessed pagers, money, and a 1992 Jeep, and such substance, device, instrument or article was intended for use in the commission of a felony, in violation of Section 2923.24 of the Ohio Revised Code. Loftis accepted a plea agreement and testified against Rigor and Annotico in their joint trial.
Rigor claims that it was error to prohibit her from cross-examining Loftis concerning his plea agreement; specifically the difference between the potential penalties for a first degree felony, for which all three had been indicted, and a third degree felony to which Loftis was permitted to plead. Loftis testified against his co-defendants after reaching a plea agreement to a third degree felony charge, with a stipulation that the State would recommend he receive the minimum sentence despite his criminal history. Rigor claims that it was important to show the jury that the minimum sentence for a third degree felony (one year) contrasted sharply with the sentence for a first degree felony (a mandatory minimum of three to ten years), in order to show the extent of Loftis' motivation to testify and thus his potential bias.
The majority first suggests that this issue is controlled by Evid.R. 403(B), which allows the discretionary exclusion of evidence if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. The majority then states that the judge did not abuse her discretion because the record does not reveal that Loftis had personal knowledge of the penalties, that he was not qualified to testify about penalties and would be testifying only to the information given to him by his lawyer. The next justification is that Rigor did not pursue other avenues to highlight for the jury the nature of the plea agreement. Finally, the majority adds a nonspecific reference to the Ohio Jury Instructions, stating that the subject of punishment is not a proper jury consideration. I will address these contentions seriatim.
The majority's reference to Evid.R. 403(B) must be mistaken; Rigor's proposed cross-examination raised no issue of undue delay or cumulative evidence, and the majority does not seek to support such an argument beyond the inexplicable citation. This rule cannot support exclusion of the questioning.
The majority next claims that the record does not show that Loftis had personal knowledge sufficient to answer the questions asked. This argument apparently is based on Rigor's failure to proffer Loftis' answers to the questions put to him on cross-examination. There is, however, no need to proffer testimony expected on cross-examination. Evid.R. 103(A)(2). The majority's personal knowledge contention is without merit, and cannot support exclusion of the questioning.
Similarly, no basis exists to exclude the questioning based on the majority's contention that Loftis was not qualified to testify to criminal penalties, or that he would only be repeating information given to him by his lawyer. Loftis' understanding of the penalties is in fact the most relevant factor bearing on the bias issue. He was the only witness qualified to testify to his understanding of the penalties, and the source of that understanding does not affect the admissibility of his testimony here. Lofts was not required or expected to give expert testimony concerning sentencing law. He was, however, certainly and uniquely able to address his own understanding of the penalties he faced. It is only through determining Loftis' understanding that we can understand the scope of his motivation to enter the plea agreement. This fact is finely exhibited in the majority's lengthy footnote quoting testimony in State v. Aldridge (1981), 3 Ohio App.3d 74, 76 n. 3,443 N.E.2d 1026, 1028 n. 3. Certainly the defendant in Aldridge was testifying to his understanding of the potential penalties available for the charges against him, and was not offering expert legal testimony on the subject. The testimony the majority apparently approves from Aldridge is indistinguishable from that Rigor attempted to elicit from Loftis here.
The majority next apparently concludes that Rigor should have attacked Loftis' plea agreement through some other line of questioning, and upholds the judge's ruling because Rigor did not pursue these alternative methods. I can only surmise that this is some oblique reference to the full opportunity of cross-examination discussed in State v. Lundgren (1995), 73 Ohio St.3d 474, 487, 653 N.E.2d 304, 319, and represents a finding that Rigor had a full opportunity to cross-examine Loftis but failed to take advantage of it.[2]
I know of no case holding that error in excluding evidence can be excused because a party did not try hard enough to overcome it through other means, and I suspect that no such authority exists.
The majority opinion includes extensive quotes from both Lundgren and Aldridge, supra, apparently meant to support the conclusion that Rigor had a full opportunity to cross-examine Loftis concerning his bias, but failed to avail herself of all the methods at her disposal. Again, however, such a conclusion can only be accepted if one accepts the initial proposition that the erroneous exclusion of evidence can be excused by reference to supposed alternative methods of cross-examination and a party's failure to utilize those methods. The full opportunity discussed in Lundgren was made after a review of actual cross-examination made in the case, not speculation concerning the questions that might have been asked.[3]
It is one thing to note the record's absence of evidence necessary to prove a party's claim; it is quite another to speculate on modes of questioning that could have been employed to conclude that Rigor had a full opportunity to cross-examine Loftis. The majority's decision is not based on evidence in the record, or even on a finding that necessary evidence is missing, but on speculation concerning evidence that might have been in the record.
The majority's citation to Lundgren tells us nothing about whether the cross-examination at issue was admissible here. In Lundgren the defendant questioned witnesses about the offenses originally charged, the offenses to which each witness pleaded guilty, the conditions of the plea arrangements, and the maximum sentences to be recommended under the plea bargains. Id. at 487, 653 N.E.2d at 319. This description certainly does not exclude questioning comparing the charged offenses with the plea agreements, and appears to approve it. Indeed, the Lundgren court noted only that the trial judge did not allow counsel to mischaracterize the plea agreements or cross-examine the accomplices on speculative issues such as their possible probation or parole. Id. Loftis' understanding of the penalty he faced prior to his plea agreement is not a speculative issue, nor was the mandatory sentence.
The Lundgren court also concluded that any error in limiting cross-examination in that case was harmless in view of the overwhelming evidence demonstrating Lundgren's guilt. Id. No such alternative is available here, as Rigor's guilt was highly dependent upon the jury's assessment of Loftis' credibility. Because Lundgren does not tell us whether the excluded questioning denied Rigor a full opportunity to cross-examine Loftis, we must turn to other precedent.
In Aldridge, supra, at paragraph two of the syllabus, this court held the following:
 It is reversible error to deny the defense cross-examination of a state witness with respect to what the witness hopes to gain from a plea, whether in the same or an unrelated case. Such examination is a legitimate method of exposing potential bias. (Emphasis added).
Similarly, in State v. Simms (1983), 9 Ohio App.3d 302, 303-04,459 N.E.2d 1316, 1319, the court stated that:
 The purpose for inquiry into a plea bargaining arrangement with a witness is to show possible bias on the part of the witness that might affect the witness' credibility. The important consideration is what the witness knew about the benefits of the plea bargain as opposed to standing trial on the original charge that might induce testimony that is untruthful. * * * In this respect, the trial court permitted cross-examination as to what the witness knew about the original charge and the penalties that might be accorded as opposed to the punishment imposed after she pled guilty to the lesser charges. (Emphasis added.)
This is exactly what Rigor attempted to accomplish in cross-examining Loftis concerning the difference between the penalties he faced and the plea agreement he reached with the prosecutor. Nothing in the majority opinion adequately explains why the exclusion of this questioning was justified.
The majority's last contention also is without merit. Its reference to the Ohio Jury Instructions apparently is directed toward 4 Ohio Jury Instructions (2000) 100, Section 413.60, which suggests the judge inform the jury that:
 1. PUNISHMENT. You may not discuss or consider the subject of punishment. Your duty is confined to the determination of the guilt or innocence of the defendant * * *. In the event you find the defendant guilty, the duty to determine the punishment is placed, by law, upon the court.
I agree that this instruction correctly states the law, and should be given in all criminal cases, but it is utterly irrelevant to the question here. Reminding the jury that it should not consider the defendant's punishment has nothing to do with its determination of a witness's bias. The only possible relevance the majority's reference can have is if one argues that admission of this cross-examination also would inform the jury of the potential prison sentences Rigor would face if convicted. The issue in that instance is whether the testimony's probative value was substantially outweighed by the danger of unfair prejudice under Evid.R. 403(A). The majority has not expressed this contention, and the judge did not address the issue in making her ruling. I will nonetheless address the issue, because I find it the only logical argument in favor of excluding the questioning here.
I agree that to inform the jury of the penalty Rigor faced would be improper if presented for no other purpose. However, in this case the evidence had a legitimate purpose which had to be weighed against its danger of causing unfair prejudice to the State before it could be excluded. Not only do I dissent from the majority's attempts to justify the ruling, the record indicates the judge excluded the evidence without weighing its probative value against its potential for prejudice, and without considering limiting instructions or admonishments to the jury to mitigate any potential harm.[4]
Furthermore, even if the majority attempted to justify its decision under Evid.R. 403(A), Loftis' credibility was an important factor in determining Rigor's guilt, and the judge should have required a strong showing of unfair prejudice before excluding otherwise relevant questioning. No such showing was made, as there was no showing even that the jury would reach the prejudicial conclusion, or that the prejudice was so great that it could not follow a limiting instruction. I would find that the judge abused her discretion in sustaining the objections during Loftis' cross-examination.
In her second and third assignments of error Rigor attacks her sentence, claiming both that the length of her prison term and the amount of her fine were inappropriate. At the sentencing hearing on February 19, 1999, the judge announced Rigor's sentence as follows:
 You have shown up today and shown remorse so I am not going to sentence you consecutively. In other words, I will impose one sentence for both counts the jury found you guilty of today. That sentence will be for a period of five years in Marysville and you will have to pay a $15,000 fine.
The judge then produced three separate journal entries mentioned by the majority purporting to record this sentence; the first, entered February 24, 1999, sentenced Rigor to concurrent sentences of fifty years for the first degree felony conviction, fifty years for the fifth degree felony conviction, and ordered a $15,000 fine, which was not specifically attached to the conviction for either count.[5] She then created a second journal entry, filed February 26, 1999, which reduced the prison terms to concurrent five years terms, and retained the nonspecific $15,000 fine. A letter from the Record Clerk of the Marysville prison to the judge advised that Rigor had arrived on March 3, 1999, that the prison term for the fifth degree felony cannot be more than twelve months so that sentence was contrary to law, and requested the judge to provide necessary and proper commitment papers. Finally, through a journal entry on March 18, 1999, the judge purported to re-sentence Rigor to concurrent terms of five years for the first degree felony and one year for the fifth degree felony but omitted any imposition of a fine.
The majority simply ignores the errors in journalizing Rigor's sentence, and instead purports to affirm a sentence that has never been journalized. Moreover, the majority ignores numerous other errors that invalidate whatever sentence it believes was imposed.
Because a court speaks through its journal entries, a sentence is not imposed until journalized. State ex rel. Hansen v. Reed (1992),63 Ohio St.3d 597, 599, 589 N.E.2d 1324, 1326; State v. Scovil (1998),127 Ohio App.3d 505, 510, 713 N.E.2d 452, 456. A defendant can appeal a journal entry that is inconsistent with the sentence imposed at a hearing, because a judge is without power to journalize an order of sentence that was not imposed at a hearing in the presence of the defendant. State v. Bell (1990), 70 Ohio App.3d 765, 773, 592 N.E.2d 848,853. If the majority intends to affirm any sentence, however, the only viable sentence imposed was that recorded in the third journal entry, which omitted the $15,000 fine.
Where there is an inconsistency between the journal entry and the judge's remarks at sentencing, the journal entry controls. Scovil, supra. The first two journal entries clearly imposed illegal sentences and were void. State v. Calvillo (1991), 76 Ohio App.3d 714, 717,603 N.E.2d 325, 327. Therefore the only journal entry that can possibly have effect is the third, which imposes no fine. If a sentence has been imposed in this case, it does not include a fine.
Moreover, at the sentencing hearing the judge purported to impose a single, undifferentiated five-year prison term and $15,000 fine as punishment for both offenses. Even if she intended to impose concurrent sentences, this does not eliminate her duty to impose separate sentences for each offense. R.C. 2929.14; R.C. 2929.19. Because the judge did not impose a lawful sentence at Rigor's hearing or properly record or correct that sentence, the only just solution is to vacate this debacle of a sentence and remand the case for resentencing.
The majority also purports to affirm the $15,000 fine by claiming that Rigor waived error on the issue when she failed to file an affidavit of indigency, object to the fine or present evidence that she lacked the resources to pay the fine. Putting aside the reversible errors already apparent (no lawful journal entry records the sentence or fine, the offense(s) for which the fine is/are imposed is not specified), I would vacate the fine for other reasons as well.
I question the majority's reliance on State v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675, unreported, as the majority's author disagreed about the viability of Frazier as recently as last year. See State v. Mullins (Nov. 4, 1999), Cuyahoga App. No. 74861, unreported (O'Donnell, J. concurring and dissenting). Although the majority can be seen as deferring to a prior decision of this court, this was exactly the tone of Judge O'Donnell's dissent in Mullins, as he noted that the original Frazier decision failed to follow this court's prior resolution of the issue. In fact, controlling authority in this court conflicts with Frazier, and finds that it is improper to impose a fine on an indigent regardless of whether an affidavit has been filed. State v. Jackson (1985), 21 Ohio App.3d 157, 159, 487 N.E.2d 585, 587.
Rigor was subject to a maximum fine of $20,000 for the first degree felony conviction, and up to $2,500 for the fifth degree felony conviction. R.C. 2929.18(A)(3)(a) and (e). The first degree felony conviction subjected her to a mandatory fine of at least $10,000, subject to the following exception:
 If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender. R.C. 2929.18(B)(1).
R.C. 2929.18(E) then provides:
 A court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.
With respect to the sentencing hearing, R.C. 2929.19(B)(6) provides:
 Before imposing a financial sanction under section 2929.18 of the Revised Code, the court shall consider the offender's ability to pay * * *.
Taken together, the statutes first mandate consideration of ability to pay even when an affidavit of indigency is not timely filed; this is accomplished by granting the judge discretion to hold a hearing if necessary to determine that ability. While an offender may be required to file an affidavit of indigency before a judge can waive imposition of a mandatory fine, the other sections require the judge to determine ability to pay regardless of whether the affidavit is filed. Furthermore, the duty under R.C. 2929.19(B)(6) suggests that it would be an abuse of discretion to determine an offender was unable to pay but refuse to delay sentencing until an affidavit was filed. Cf. State v. Gipson (1998),80 Ohio St.3d 626, 687 N.E.2d 750 (finding no abuse of discretion in denying filing of affidavit where judge expressly considered the offender's ability to pay before imposing fine).
The majority, citing Frazier, supra, finds that a judge need not inquire into an offender's ability to pay if he does not raise the issue himself. This conclusion is based on the proposition that although a judge has a duty to consider ability to pay, a reviewing court can presume compliance with this duty if faced with a silent record. State v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus. Where, however, the record shows that no evidence was available to inform the judge about certain issues, this court has held that the Adams presumption is rebutted, because the lack of information shows a lack of consideration. State v. Ziko (1991), 71 Ohio App.3d 832, 838,595 N.E.2d 1019, 1023. Moreover, the enactment of Senate Bill 2" (Am.Sub.S.B. No. 2) trumps any presumption of compliance or regularity at a sentencing hearing. State v. Ayala (Dec. 16, 1999), Cuyahoga App. No. 75207, unreported.
The record reveals Rigor's lawyer stated after the alleged sentencing that he would be filing a motion on that but did not explain what the motion would be directed to and apparently did nothing. The judge did not give Rigor or her lawyer any opportunity to articulate any objections on either the term of incarceration or the fine. In this case the only evidence in the record indicates Rigor's inability to pay any fine imposed.
The judge had previously found Rigor to be indigent and appointed her a lawyer for trial. Immediately after imposing sentence, she questioned Rigor concerning her ability to pay an appellate lawyer; Rigor replied that she could not and the judge stated that she would appoint appellate counsel, and order transcripts at state expense for purposes of Rigor's appeal. Although the Frazier court ruled that a finding of indigence for purposes of appointing counsel does not necessarily indicate the inability to pay a fine, this ruling conflicts with numerous decisions of this court ruling that a finding of indigence for appointment of counsel is relevant to determining the ability to pay a fine, and that it is an abuse of discretion to impose a fine upon an offender who has been sentenced to prison and has been found indigent for purposes of appointment of counsel. Jackson, supra; State v. Davis (May 24, 1984), Cuyahoga App. No. 47622, unreported; State v. Copen (Dec. 21, 1981), Cuyahoga App. No. 43227, unreported; State v. Houston (Jan. 17, 1980), Cuyahoga App. No. 40124, unreported.
The pre-sentence investigation report, which the judge claimed to have reviewed prior to sentencing, revealed that Rigor had no financial assets, significant debts, and very modest income as a cosmetologist. Furthermore, the imposition of a prison sentence restricted Rigor's future ability to pay the fine, especially as the length of her prison term is at this point unknown. I would find the imposition of this fine, or fines as we have no idea for what specific charge it was levied, to be an abuse of discretion.
One should note, if one should find a waiver of objection to this fine(s), it was an error by Rigor's lawyer because he must have been aware of the imposition of a fine as part of the sentence and ought to have filed an affidavit of indigency before sentencing. Such error could be a basis for a timely petition for postconviction relief, or a basis to move this court to re-open her direct appeal, claiming ineffective assistance of appellate counsel. State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204. However, both alternatives are unlikely sources of relief; the first because Rigor failed to raise the issue of ineffective assistance in this appeal, and the second because of courts' general reluctance to recognize ineffective assistance as anything but failed strategy. In short, the denial of Rigor's claim here practically defeats any opportunity she has to challenge the fine, even though the penalty is imposed because her lawyer failed to represent her adequately. The doctrine of plain error must be employed to prevent this injustice and protect public confidence in the integrity of the judicial system. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; State v. Loines (1984), 20 Ohio App.3d 69, 71,-72, 484 N.E.2d 727, 731.
Even if one were to disregard the above arguments, the fine imposed is not supported by the record and must be vacated pursuant to R.C.2953.08(G)(1)(a). Rigor was subject to a possible fine of up to $20,000 for the first degree felony conviction, and another $2,500 fine for the fifth degree felony conviction. Even if the failure to submit an affidavit of indigency properly subjected Rigor to this fine, the mandatory amount was only $10,000. Under any analysis, any fine above this amount was discretionary and one can only conclude from this record that the judge failed to consider Rigor's ability to pay before imposing the $15,000 fine. The Frazier rationale concerning the affidavit of indigency would not apply to a discretionary fine.
I also agree with Rigor that the judge failed to make adequate findings prior to sentencing her. The majority concedes that Rigor was entitled to the minimum prison term unless the judge found on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. R.C. 2929.14(B). In apparent compliance with the statute, Rigor was told at the hearing that it would demean the seriousness of the offense for me to give you a minimum penalty. The majority finds this statement sufficient to justify Rigor's five-year sentence for the first degree felony conviction, relying on State v. Edmonson (1999), 86 Ohio St.3d 324, 715 N.E.2d 131, for the proposition that a judge need not state reasons, but only the finding, before imposing more than the minimum sentence on one who has never before been sentenced to prison. However, Edmonson requires more than a statutory recitation to uphold a judge's finding. The judge that makes findings must note that it engaged in the analysis set forth in the applicable statute. Id. at 326, 715 N.E.2d at 134. The record indicates no such thing, but instead shows that the judge was originally prepared to impose consecutive sentences on Rigor but did not in view of Rigor's showing of remorse at sentencing. On this record it appears the judge did not depart from the minimum based on the evidence at hand, but instead considered imposing an even greater sentence on Rigor before departing downward. Instead of beginning the analysis by presuming the minimum sentence was applicable, the judge presumed that greater penalties were required. This does not show the analysis Edmonson requires.
Although I concur in the majority's judgment on the fourth and fifth assignments of error, I write only to note an issue not discussed in Rigor's Brief. She was indicted on a single count of possession of criminal tools, R.C. 2923.24. The indictment alleged that she possessed money, pagers, and an automobile; the jury was instructed that if it found that Rigor possessed any one of these items with a criminal purpose, it could convict Rigor of the offense. It appears that courts of this district have found no difficulty in approving such indictments, nor, apparently, have courts required the removal of items from jury instructions when there is no sufficient evidence to convict. In this case the jury was instructed that it could convict Rigor on the criminal tools charge for possessing any of the items. After her conviction, Rigor stipulated to the forfeiture of the vehicle and the pager.
It is disheartening that these practices are considered so far beyond controversy that a defendant would acquiesce to them, much less stipulate to their correctness. There are conflicting opinions concerning whether money and pagers can be considered criminal tools when the crime involved is possession and there is no evidence of drug transactions. See State v. McShan (1991), 77 Ohio App.3d 781, 603 N.E.2d 1076 (majority finding sufficient evidence to find pager was criminal tool; Harper, J., dissenting); See, also, United States v. One 1990 Ford Ranger Truck (N.D.Ga. 1995), 876 F. Supp. 1283 (discussing approaches to determining propriety of civil forfeiture) In this case there was no evidence linking the money or the pagers to the possession offense, and no suggestion or instruction that either item met the test for prima facie proof under R.C. 2923.24(B).[6] Furthermore, I certainly would question those authorities finding that the mere possession or use of drugs while in a vehicle renders the vehicle a criminal tool. rather than to address criminal behavior. Rigor's clothes, in which she hid the bag of drugs, arguably were criminal tools under the same theory that rendered the vehicle a criminal tool, but were not charged as such and forfeiture of them was not sought.
Finally, even though courts apparently have approved the use of single-count indictments charging several items as alternatively constituting the criminal tool, I am not comfortable allowing a conviction to stand when the jury could have convicted on a theory unsupported by the evidence. Because it is imperative that the jury link the possession of a particular article with an appropriate mens rea for that article, I would hold that this case presents distinct conceptual groupings requiring jury instructions that explain the need for jury unanimity in specifying which item or items constituted criminal tools. State v. Johnson (1989), 46 Ohio St.3d 96, 104-05, 545 N.E.2d 636, 644; see, also, United States v. Duncan(C.A.6, 1988), 850 F.2d 1104, 1111. We would thus avoid the danger that the jury convicted on a theory that was not supported by sufficient evidence, and future offenders need not acquiesce to the forfeiture of property when the jury has determined it was not used for a criminal purpose.
I would reverse Rigor's conviction or, in the alternative, vacate her sentence in its entirety and remand for resentencing.
[1] My dissent here will raise many of the same issues surrounding the conviction and Judge McCafferty's sentencing of Rigor's co-defendant, Robert Annotico. See State v. Annotico (2000), Cuyahoga App. No. 76202, unreported. Therefore, parts of my opinion here will be verbatim repetitions of my dissent in Annotico.
[2] Although I am uncomfortable speculating on the majority's unstated arguments, I am forced to do so because I cannot otherwise make sense of the statements made or fashion a meaningful response.
[3] I note also that the majority's argument here leads inescapably to a conclusion that Rigor's attorneys rendered ineffective assistance of counsel.
[4] I find the majority opinion illustrative of inconsistent attitudes toward juries; on one hand juries are able to disregard all manner of prosecutorial misconduct if instructed to do so by a judge, while on the other hand they will incapable of following a judge's instructions once informed of the penalty for a charged offense.
[5] Rigor was subject to a mandatory fine of $10,000 to $20,000 on the first degree felony conviction, and a discretionary fine of up to $2,500 on the fifth degree felony conviction.
[6] I note that State v. McDonald (1987), 31 Ohio St.3d 47,509 N.E.2d 57, did not fully address the use of presumptions when deciding the facial constitutionality of R.C. 2923.24. The McDonald court ironically found that the mens rea requirement of purpose helped save the statute from vagueness and overbreadth challenges, yet failed to address the fact that the statutory presumptions eviscerate the requirement.